**Donald W. McCAMBRIDGE, Plaintiff,**

v.

**BETHLEHEM STEEL CORP., Defendant.**

**Civ. A. No. 93–7002.**

United States District Court, E.D. Pennsylvania.

Dec. 16, 1994.

---

Quintes D. Taglioli, Allentown, PA, for plaintiff.

Dona S. Kahn, Richard G. Tuttle, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

## I. BACKGROUND

Defendant Bethlehem Steel Corporation ("Bethlehem") employed Plaintiff Donald W. McCambridge for twenty-one years until he was permanently laid off from his job, effective June 30, 1992 as part of a "permanent force reduction." At the time of his termination, Defendant employed Plaintiff, then age sixty, as Director of Fiscal Affairs in its Industry Affairs Division.

In Count I, Plaintiff alleges that his termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. In Count II, Plaintiff raises two claims. He claims that Defendant violated the 1990 Older Workers' Benefit Protection Act ("OWBPA"), Pub.L. No. 101–433, 104 Stat. 978 (codified as amended at 29 U.S.C. §§ 623(f)(2), 623(i)-(*l*), 626(f)) which amended the ADEA, because Defendant reduced his

entitlement to severance pay based on his eligibility for retiree health benefits. He also claims that Defendant reduced his special initial pension amount ("Special Payment") by the amount of his earned vacation in violation of the OWBPA.

Two motions are pending before the Court. In one motion, Defendant moves for summary judgment on both counts of Plaintiff's complaint. In the other motion, Plaintiff moves for partial summary judgment on Count II. In the interests of clarity and convenience, the Court considers both motions in this memorandum, although it issues two separate orders.

After considering the parties memoranda in support of and opposition to the pending motions, the Court grants Defendant's motion for summary judgment with respect to the claim concerning calculation of severance pay in Count II. The Court denies Defendant's motion for summary judgment on the issue concerning payment of vacation pay in Count II as well as Defendant's motion for summary judgment on Count II. The Court also denies Plaintiff's motion for summary judgment in its entirety.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

■ Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court's role is to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Josey v. John R. Hollingworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Further, the evidence must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, if the non-moving party fails to adduce sufficient evidence in connection with an es-

sential element of the case for which it has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

### B. *Age Discrimination in Employment Act*

■ The ADEA proscribes employers from failing to hire, discharging, or otherwise discriminating against any individual because of that person's age, so long as he or she is within the statutorily protected class of persons who are at least forty years of age. 29 U.S.C. §§ 623(a), 631(a).

■ A plaintiff may frame a discrimination action as a "mixed motive" case or a "pretext" case. In a mixed motive case, the plaintiff alleges that the decision to terminate resulted from a mixture of proper and improper motives. *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509 (3d Cir.1992), cert. denied, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). The plaintiff must produce evidence of documents, conduct, or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude. The plaintiff then needs to prove "only that the discriminatory motive made a difference in the decision." *Griffiths v. CIG-NA Corp.*, 988 F.2d 457, 471 (3d Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993).

■ If a plaintiff lacks direct evidence of discrimination, the plaintiff may allege that the defendant's proffered reason for its employment decision is pretextual and that discrimination was the real reason. The Supreme Court established the standards necessary to prove pretextual discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Third Circuit Court of Appeals is currently weighing whether the standard requires that discrimination be *the* sole factor or *a* determinative factor in the employment decision in pretext cases. *Cf. Miller v. Cigna Corp.*, No. 93–1773, 1994 WL 283269 (June 28, 1994), *vacated and ordered*

*for rehearing en banc,* 1994 WL 420284 (Aug. 12, 1994), *with Griffiths,* 988 F.2d 457. Although the Court presumes that this case is a pretext case,[1] it is not necessary for the Court to consider what Plaintiff must prove at this time because it does not affect the outcome of Defendant's motion.

 Under the familiar burden shifting rules established for pretextual discrimination cases, once the plaintiff establishes a prima facie case, it creates a presumption that the employer unlawfully discriminated against the·employee. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. In a reduction-in-force ("RIF") case, the plaintiff demonstrates the existence of a *prima facie* case by showing: (1) the plaintiff is a member of the protected class; (2) the plaintiff was discharged from a job; (3) the plaintiff was qualified for the job from which she was terminated; and (4) other workers not in the protected class were retained. *Seman v. Coplay Cement Co.,* 26 F.3d 428, 431 (3d Cir.1994); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

 After the plaintiff establishes a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Once the employer rebuts the presumption raised by the prima facie case, the presumption disappears. " 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2747 (1993) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

## C. Decision to Terminate Plaintiff

With respect to Count I, Defendant asserts that summary judgment is appropriate on the termination claim because: (1) Plaintiff admitted that age was not the motivating factor for his lay off by Defendant; and (2) Plaintiff is precluded from recovering damages because he failed to mitigate his damages.[2] The Court addresses each of these issues in turn.

 At the outset, the Court notes that Plaintiff has stated a prima facie case. Plaintiff has presented evidence to show that he was sixty years old when he was laid off, he was qualified for the job from which he was terminated, and he was laid off while other younger employees with equal or lesser qualifications were not selected for lay off.

 Defendant argues that summary judgment is appropriate because the Plaintiff's testimony shows that he believes that he was chosen for lay off because his economic circumstances permitted him to "land on his feet" after lay off. Def.'s Mem. of Law in Supp. of Its Mot. for Summ.J. [hereinafter "Def.'s Mot. for Summ.J."] at 21. This argument must be rejected. The issue at hand is whether Defendant discriminated in its decision to lay off Plaintiff. At this time, a material issue of fact still exists as to Defendant's motivation. Plaintiff avers that each section in his department had to reduce its forces by a certain number of employees, that he refused to accept an offer for early retirement, that he was the only employee in his department terminated, and that other sections in his department met the reduction quota because other employees accepted early retirement. Because Plaintiff has presented evidence creating a factual dispute concerning Defendant's reasons for its lay off and because Plaintiff has not had an opportunity to depose company officials and Defen-

---

**1.** As of yet, Plaintiff has offered neither direct evidence of discrimination nor "circumstantial evidence 'of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude.' " *Griffiths,* 988 F.2d at 470 (citing *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992)).

**2.** Defendant also sought summary judgment on the grounds that Plaintiff did not file a timely complaint, however,·it withdrew this portion of its motion by letter dated August 18, 1994.

dant has not responded to Plaintiff's interrogatories or requests to produce documents, summary judgment on the issue of liability is not appropriate at this time.

■ Defendant also argues that Plaintiff has done nothing since April 1992 to look for another job and that as a result, Defendant is entitled to partial summary judgment on the damages issue for Count II. Summary judgment for Defendant on the issue of damages is not appropriate because there remains a genuine issue of material fact whether Plaintiff attempted to mitigate his damages. Plaintiff avers that he tried to obtain other employment beginning in February 1992 and that he intensified his efforts after April 22, 1994. Pl.'s Mem. Law Contra Def.'s Mot. for Summ.J., Ex.B. Therefore, a material issue of fact remains, and summary judgment on the issues of liability and damages in Count I is not appropriate at this time.

### D. *Calculation of Severance Allowance and Pension*

Both parties seek summary judgment on Count II. Count II raises two issues: (1) whether Defendant's method for calculating Plaintiff's severance payments violated the OWBPA and (2) whether Defendant violated the OWBPA in its calculation of Plaintiff's special initial pension amount ("Special Payment"). The parties are not in dispute as to the material facts as to the first issue and the Court concludes as a matter of law that Plaintiff's severance payment plan does not violate the OWBPA. There is a genuine issue of material fact as to the second issue and the Court finds that summary judgment is not appropriate on this issue.

### 1. *Calculation of Severance Payment*

Plaintiff claims that Bethlehem's policy of reducing employees' severance allowances based on their eligibility for retiree health benefits violates the OWBPA. At issue are two employee benefit plans in which Plaintiff was a participant: the Severance Allowance Plan and the Social Insurance Plan ("SIP").

The SIP makes a variety of health care plans available to eligible non-represented employees. Pursuant to the SIP, Plaintiff was a participant in the Comprehensive Medical Program at the time of his retirement. The SIP provides that employees who accrue fifteen years of continuous service and retire on a regular pension continue to be considered participants in the SIP. As a result, retired employees remain eligible for the same health care benefits available to non-represented salaried employees. Def.'s Mot. for Summ.J., Ex. C at 3 (Aff. of Michael P. Dopera, Def.'s Plan Administrator [hereinafter "Dopera Affidavit"]). If an employee does not elect coverage on retirement because the employee is already covered by another program, the employee may enroll when the other coverage ceases. If an employee does not have other coverage at retirement and still declines to elect coverage, the employee may enroll during subsequent open enrollment periods. Bethlehem has held an open enrollment period for non-represented salaried pensioners at least once each year since 1984.

Defendant's Severance Plan provides that an employee who completed fifteen years of continuous service is entitled to a severance allowance based on one week's pay for each year of continuous service, up to a maximum of $48,000, less the value of any retiree health benefits afforded to the participant and other specified reductions. Def.'s Mot. for Summ.J., Ex. C. (Summ. Plan Description of Severance Allowance Plan); Pl.'s Mem. Law in Supp.Mot. for Partial Summ.J. [hereinafter "Pl.'s Mot. for Partial Summ.J."] at 4–5. Defendant calculated Plaintiff's severance allowance as zero because the value of the retiree health benefits available to him, $51,754, exceeded the maximum amount of severance pay otherwise made available to terminating employees, $48,000.

Plaintiff accumulated fifteen years of continuous service, retired on a regular pension, and therefore was eligible for retiree health benefits as part of the SIP. Accordingly, on June 17, 1992, the Assistant Secretary of Defendant's Severance Allowance Plan Committee, E. R. French, notified Plaintiff by letter that his regular severance allowance would be reduced by the value of the retiree health benefits available to him, even if he declined to enroll for retiree health coverage. Pl.'s Mot. for Partial Summ.J., Ex. A. Plain-

tiff would have rejected the benefit because he had alternative health insurance based on his status as a retired naval officer, however he enrolled for coverage "[s]ince it was obvious to me that Bethlehem would reduce my Severance Allowance based on my eligibility for retiree health benefits...." *Id.* Ex. 1.

Plaintiff argues that it was illegal for Defendant to reduce his severance allowance by the value of the retiree health benefits whether or not he enrolled in the retiree health plan at the time of retirement. On the other hand, Defendant argues that the OWBPA specifically authorizes employers to offset the value of severance allowances by the value of retiree health benefits.

■ Congress passed the OWBPA in 1990 to address shortcomings of the ADEA and to legislatively overrule the Supreme Court's decision in *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). The OWBPA explicitly permits an employer to reduce severance payments by the value of retiree health benefits an employee receives. Section 4($l$)(2)(A) of the OWBPA provides as follows:

> It shall not be a violation of subsection (a), (b), (c), or (e) of this section solely because following a contingent event unrelated to age—
>
> (i) the value of any retiree health benefits received by an individual eligible for an immediate pension ...
>
> are deducted from severance pay made available as a result of the contingent event unrelated to age.

29 U.S.C. § 623($l$)(2)(A).

To prevent employers from creating sham retiree health plans for the purpose of eliminating older employees' severance payments, Congress defined retiree health benefits for the purposes of this section as follows:

> benefits provided pursuant to a group health plan covering retiree, for which ... (i) the package of benefits provided by the employer for the retirees who are below age 65 is at least comparable to benefits provided under [Medicare].

29 U.S.C. § 623($l$)(2)(D). The parties do not dispute the fact that the benefits Defendant provides qualify as "retiree health benefits" pursuant to section 623, nor do they dispute the fact that Defendant provides retiree health benefits of unlimited duration. The ADEA statutorily values these benefits at $48,000. The statute provides as follows:

> If the obligation of the employer to provide retiree health benefits is of unlimited duration, the value for each individual shall be calculated at a rate of $48,000 for individuals below age 65 and $24,000 for individuals age 65 and above.

29 U.S.C. § 623($l$)(2)(E)(ii).

Plaintiff argues that the OWBPA prohibits discrimination against older workers except when age-based reductions in employee benefits plans are justified by significant cost considerations. *Id.* at 12. Plaintiff argues that because he is denied severance allowance whether or not he actually receives the retiree health benefits and that mere eligibility does not affect the cost to the employer, the severance plan violates the OWBPA. *Id.*

■ Plaintiff's argument must be rejected. The undisputed facts show that Plaintiff may elect to enroll in the health plan until his death, and after his death, his surviving spouse may elect to enroll until her death. Dopera Affidavit at 4. Even if an employer saves money when employees decline to enroll for retiree health benefits on their retirement, all retiring employees receive a retiree health benefit, the opportunity to enroll in the health plan. Because the ADEA explicitly permits employers to reduce severance pay by the value of retiree health benefits received, Defendant did not violate the ADEA with respect to Plaintiff.

### 2. *Calculation of the Special Initial Pension Amount*

Plaintiff argues that Defendant's pension plan is in violation of the OWBPA because it discriminates against older workers' entitlement to vacation pay as a matter of law. Defendants argue that Plaintiff is barred from asserting a claim regarding the special initial pension amount ("Special Payment") because Plaintiff failed to raise this issue in his charge filed with the EEOC and that the Special Payment portion of his pension was

properly calculated in accordance with the terms of the pension plan.

■ The boundary of the civil action in the district court is generally defined by the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976). From the documents the parties have provided, the Court cannot determine whether the investigation of Plaintiff's charge did or reasonably would have included a claim alleging an illegal denial of vacation benefits. Although Plaintiff appears to have raised this issue with the EEOC, the issue has not been provided in the charge. Defendants argue that this issue was never raised during the investigation, however, it has provided no support for this claim. From the documents the parties have provided, the Court cannot make a determination whether or not the denial of vacation benefits was a claim reasonably expected to be included in the investigation.

Assuming that the issue was included in the charge, the Court concludes that a material issue of fact remains as to liability. At Bethlehem, a pension consists of a Special Payment and a regular pension amount ("regular pension"). The Special Payment is a lump sum paid in the month after retirement occurs and covers the first three calendar months following retirement. The regular pension is paid in monthly installments thereafter. Def.'s Mot. for Summ.J., Ex. D.

Bethlehem calculates the Special Payment for people in Plaintiff's situation as follows:

[T]he amount of special payment for a participant who was entitled to receive a vacation in the year of retirement or who would have been entitled to receive a vacation in the year of retirement except for such retirement shall be calculated as follows:

(1) The number of weeks of vacation to which the participant was or would have been entitled will be determined.

(2) The number determined in (1) above shall be subtracted from 13 (14 in the case of a participant eligible for more than four weeks of regular vacation in the year of retirement).

(3) The number determined in (1) above shall be multiplied by the participant's vacation pay.

(4) The result determined in (2) above shall be multiplied by the participant's adjusted vacation pay.

(5) The amounts calculated in (3) and (4) above shall be added together and then reduced by all vacation pay the participant received in such a year.

*Id.* The parties agree that Plaintiff was entitled to four weeks of vacation pay in 1993, the year of his retirement.

It is not in dispute that Plaintiff received nine weeks special pay. Plaintiff argues, however that the Special Payment is actually thirteen weeks and that he was "entitled" to an additional four weeks of vacation pay, for a total of seventeen weeks of pay. Pl.'s Mot. for Partial Summ.J. at 13. It is undisputed however, that in January 1993, prior to Plaintiff's retirement in June 1993, Plaintiff elected to use his entire vacation entitlement by taking pay in lieu of vacation. Thus, it appears that according to Defendant's policies, Plaintiff was only entitled to nine weeks of Special Payment, having already received four weeks of vacation pay.

■ The Court concludes, however, that a material issue of fact remains as to whether the Special Payment is in violation of the OWBPA. While all laid off workers receive their vacation pay whether they are retiring or not, neither party has provided evidence concerning what younger workers receive when they begin to collect their pensions. Because there is a material issue of fact as to how the these younger workers' pensions are calculated, summary judgment is not appropriate on this issue.

Plaintiff's motion for partial summary judgment is denied. Defendant's motion for summary judgment in Count II with respect to Defendant's calculation of the Special Payment is granted. The remainder of Defendant's motion is denied.

Appropriate Orders follow.

### ORDER

In consideration of Plaintiff's Motion for Partial Summary Judgment and the parties' memoranda in support of and in opposition to this motion, and for the reasons stated in the foregoing Memorandum, Plaintiff's motion is **DENIED.**

**IT IS SO ORDERED.**

### ORDER

In consideration of Defendant's Motion for Summary Judgment, the parties' memoranda in support of and in opposition to this motion, and for the reasons stated in the foregoing Memorandum, the Court concludes as a matter of law that Defendant did not violate the Older Workers' Benefit Protection Act in its calculation of Plaintiff's severance payment. The remainder of Defendant's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**