

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-1995

# FDIC v Wentz

Precedential or Non-Precedential:

Docket 94-5556

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"FDIC v Wentz" (1995). *1995 Decisions.* Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-5556

_____


FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for The Howard Savings Bank,

Appellee
v.

SIDNEY F. WENTZ; NATALIE I. KOETHER; WILLIAM E. MARFUGGI;
ROBERT M. KREMENTZ; J. ROBERT HILLIER,

Natalie I. Koether and
Sidney F. Wentz, Appellants

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 94-cv-03287)

_____

Argued April 20, 1995

Before:  STAPLETON, HUTCHINSON, and WEIS, Circuit Judges

Filed June 5, 1995

_____

Laurence B. Orloff, Esquire (ARGUED)
Laura V. Studwell, Esquire
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway
Roseland, New Jersey  07068

Attorneys for Appellants


Jerome A. Madden, Esquire (ARGUED)
Ann S. DuRoss, Esquire
Richard J. Osterman, Jr., Esquire
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C.  20429

Attorneys for Appellee

———————————

OPINION OF THE COURT

———————————

WEIS, Circuit Judge.

In the course of its investigation of a failed depository institution, the Federal Deposit Insurance Corporation issued a subpoena to former directors of the bank directing them to produce a wide variety of their personal financial records as well as those of family members. The district court required the directors to produce only their own records, showing additions or reductions in their assets. Rejecting the directors' claims of privacy violations, we will affirm the district court's order.

Natalie I. Koether and Sidney F. Wentz were directors of The Howard Savings Bank of Livingston, New Jersey, which was declared insolvent on October 2, 1992. On that same day, the FDIC was appointed receiver.

In April 1993, the FDIC issued an "Order of Investigation" pursuant to 12 U.S.C. § 1820(c) and 12 C.F.R. § 303.9(i)(2), targeting former officers and directors of the bank. Four purposes were cited in the order: (1) determining whether the individuals may be liable as a result of any action or inaction that could have affected the bank; (2) assessing whether the pursuit of litigation would be cost effective by considering the ability of the individuals to satisfy a judgment; (3) establishing whether the FDIC should seek to avoid transfers

of interests or incurrences of obligations; and (4) ascertaining whether the FDIC should seek attachments of assets. The order authorized FDIC representatives to issue subpoenas duces tecum.

The directors, together with other bank principals, were served with notices to appear for depositions and ordered to produce documents in some twenty-eight different categories covering the six-year period preceding October 1992. Included were records in their possession pertaining to bank operations. In addition, the subpoena demanded production of such documents as financial statements and credit applications of the directors and their spouses; records of any bank accounts of the directors and those maintained by "any member of [their] immediate famil[ies]," including canceled checks and bank statements; tax returns; title and registration papers for motor vehicles, boats, and airplanes; pension and profit-sharing plans in which the directors or their spouses had an interest; insurance policies; and records of inheritance, and other such gifts received by the directors and "any member of [their] immediate famil[ies]."

The directors timely complied with the requests for documents having any connection with their activities as officials of the bank, but refused to produce their personal records and those of their families.

In seeking enforcement of the subpoena in the district court, the FDIC presented the affidavit of James M. Judd, an investigations specialist for the FDIC. It stated that the documents were necessary to enable the FDIC to determine the nature and extent of any losses sustained by the bank because of

negligence or breach of fiduciary duty by the directors, and to establish whether it would be cost-effective to pursue any such claims. The affidavit alleged that the directors had approved transactions that resulted in losses of millions of dollars and that the transactions "appear[ed] to exhibit inadequate documentation, unsafe concentrations of credit, poor credit administration, and inadequate supervision of management." Finally, the affidavit asserted that the directors had been "warned repeatedly" by bank examiners about lax business practices at the bank, but that the deficiencies were not corrected.

The district court conducted a hearing and, at its conclusion, ordered the directors to produce all records that demonstrated increases or depletions in, or transfers of, their assets. As the judge explained,

"I do not sanction an inquiry whose sole purpose is to find out whether these folks have money to respond to a judgment, if one should eventuate. . . . [M]y requirement of document production . . . is narrow enough to specifically address transfers or sudden accretions or depletions of wealth. . . . I feel that those purposes are reasonably within the power of the FDIC, and I feel that what I have ordered is a limited incursion into the financial affairs that is tailored

to match up with the purposes that I have articulated."

In a formal order filed a few days later, the court denied the FDIC's request for enforcement of the subpoena duces tecum, except that the directors were instructed to produce:

"(a) All documents which relate to any increases or depletions of assets, or any transfer of assets, for the period October 1986 through the date of this Order; and

(b) All financial statements prepared by or on behalf of [the directors] from October 1986 through the date of this Order."

The court then granted a stay of its order pending resolution of this appeal.

The directors now contend that (1) the FDIC's statutory powers do not permit an unwarranted intrusion into their personal affairs, (2) the subpoenas were issued for an improper purpose, particularly in the context of "cost effectiveness" of potential litigation that might be initiated by the FDIC, and (3) the documents sought are not relevant. The directors also complain that the FDIC offered no grounds for suspicion of wrongdoing to justify issuance of a subpoena, and hence, it violates the Fourth Amendment.

Preliminarily, we observe that the district court's order substantially narrows the subpoena in two significant aspects. First, the demand for production of documents of the directors' spouses and immediate family members is no longer effective. Second, the documents that the directors must produce

are limited to those pertaining to additions or diminutions of their own assets.

As an appellate court, we will affirm an order enforcing an agency's subpoena unless we conclude that the district court has abused its discretion. NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992). To determine whether there has been an abuse of discretion, the reviewing court must consider whether the district court's decision was based on irrelevant factors or on clearly erroneous findings of fact, and whether there has been a clear error of judgment. Id. "[T]he district court's role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding." Wearly v. FTC, 616 F.2d 662, 665 (3d Cir. 1980).

To obtain enforcement of an administrative subpoena, the agency must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry is relevant, that the information demanded is not already within the agency's possession, and that the administrative steps required by the statute have been followed. United States v. Powell, 379 U.S. 48, 57-58 (1964); United States v. Morton Salt Co., 338 U.S. 632, 652 (1950). The demand for information must not be unreasonably broad or burdensome. United States v. Westinghouse Elec. Corp., 788 F.2d 164, 166 (3d Cir. 1986).

It is not necessary, in most instances, that the agency make a showing of liability before seeking to enforce a subpoena. As the Supreme Court has observed, an agency "`can investigate

merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" Powell, 379 U.S. at 57 (quoting Morton Salt, 338 U.S. at 642-43). The subpoenaed party bears the heavy burden of establishing an abuse of the court's process. United States v. Cortese, 614 F.2d 914, 919 (3d Cir. 1980).

When personal documents of individuals, as contrasted with business records of corporations, are the subject of an administrative subpoena, privacy concerns must be considered. See Whalen v. Roe, 429 U.S. 589, 599 (1977). Thus, in United States v. Westinghouse Elec. Corp., 638 F.2d 570, 578 (3d Cir. 1980), where a governmental agency sought production of employee medical records, we listed as relevant factors such matters as the type of record requested, the information that it might contain, the potential for harm and subsequent nonconsensual disclosure, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, the specificity of the agency's statutory mandate, and the presence of recognizable public interests justifying access. See also In re McVane, 44 F.3d 1127, 1137 (2d Cir. 1995) (agency subpoenas directed at individuals do implicate privacy rights); Resolution Trust Corp. v. Walde, 18 F.3d 943, 948 (D.C. Cir. 1994) (same).

12 U.S.C. § 1818(n) supplies the FDIC with the power to issue subpoenas duces tecum. The permissible purposes are set out in 12 U.S.C. § 1821(d)(2)(I)(i) as "carrying out any power, authority, or duty with respect to an insured depository institution (including determining any claim against the

institution and determining and realizing upon any asset of any person in the course of collecting money due the institution)." The FDIC is empowered to avoid fraudulent asset transfers, 12 U.S.C. § 1821(d)(17), assert claims against directors and officers, id. § 1821(k), and seek court orders attaching assets, id. § 1821(d)(18).

Against this sweeping grant of power to the FDIC, we consider the challenges mounted by the directors. As noted earlier, the district court -- entertaining grave doubts about the breadth of the subpoena, the relevance of documents of family members, and the burdens of production imposed on the directors -- substantially reduced the original scope of the subpoena. The FDIC has not challenged the district court's order, and as the record now stands, the directors object only to producing those personal records that would show additions and subtractions to their private assets.

In applying the factors we identified in Westinghouse, 638 F.2d at 578, we observe at the outset that there is a significant public interest in promptly resolving the affairs of insolvent banks on behalf of their creditors and depositors, many of whom have lost significant sums of money and are often left with little hope for recovery. Personal financial records have never been as tightly guarded as "information concerning one's body." Id. at 577. Subpoenas and summonses of the Internal Revenue Service requiring production of such records have routinely been enforced. See, e.g., Pickel v. United States, 746 F.2d 176, 184 (3d Cir. 1984).

The FDIC has shown a reasonable need for gaining access to the directors' records in order to determine whether they reveal breaches of fiduciary duties through the improper channeling of bank funds for personal benefit. Moreover, the directors have not produced any evidence to show that the information contained in their personal financial records "is of such a high degree of sensitivity that the intrusion could be considered severe or that the [directors] are likely to suffer any adverse effects from disclosure to [FDIC] personnel." Westinghouse, 638 F.2d at 579. Finally, we observe that regulatory provisions have been promulgated to guard against subsequent unauthorized disclosure of the subpoenaed information. See 12 C.F.R. pts. 309 & 310.

Accordingly, we conclude that the strong public interest in safeguarding the FDIC's legislative mandate outweighs the minimal intrusion into the privacy that surrounds the directors' personal financial records and any accompanying burdens of production.

In balancing competing interests in this case, we cannot say that the district court abused its discretion in concluding that the limited investigation it approved is relevant to the proper functions of the FDIC. Without impugning in any way the integrity of the directors, it must be observed that the allegations of mishandling of certain loans by the bank furnishes a proper basis for an investigation into (1) whether the individuals might be liable, (2) whether there might be transfers

that should be avoided, or (3) whether the FDIC should seek attachment of assets.

We do not resolve the directors' contention that the FDIC must assert an articulable suspicion of liability before pursuing an inquiry into the cost-effectiveness of potential litigation against them. The directors rely heavily on McVane and Walde. However, in McVane, the Court found an adequate basis for enforcing the subpoena against directors even as to the cost-effectiveness factor. Walde did sustain an objection to the disclosure of personal records of certain directors for that limited purpose, but we need not discuss that case further in view of the fact that the district court's order here is sustainable on any one of the FDIC's other three objectives.

The directors also contend that the district court's order is too vague because, literally, a purchase of groceries would be included within the scope of the subpoena as a depletion of personal assets. At oral argument, counsel for the FDIC suggested that this difficulty might be avoided by reading into the order the $5,000 limitation on items stated in the subpoena itself. That appears to us to be a reasonable reading of the district court's order, but if it is not satisfactory to the parties, they may request further clarification from the district judge.

The order of the district court will be affirmed.