

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-1995

# United States v Oncology

Precedential or Non-Precedential:

Docket 94-7741

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Oncology" (1995). *1995 Decisions.* Paper 190.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/190

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94-7741

———————

UNITED STATES OF AMERICA,

Appellant

v.

ONCOLOGY SERVICES CORPORATION

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 93-cv-00207)

———————

Submitted Under Third Circuit LAR 34.1(a)
June 26, 1995
Before:  MANSMANN, GREENBERG and SAROKIN, Circuit Judges.

(Filed July 21, 1995)

———————

Frank W. Hunger, Esquire
David M. Barasch, Esquire
Barbara C. Biddle, Esquire
Katherine S. Gruenheck, Esquire
United States Department of Justice
Civil Division
10th & Pennsylvania Avenue, N.W.
Washington, DC  20530-0001

Charles E. Mullins, Esquire
United States Nuclear Regulatory Commission
Office of General Counsel
1717 H Street, N.W.
Washington, DC  20530

  COUNSEL FOR APPELLANT

Jonathan P. Phillips, Esquire
10 Westwood Road
P.O. Box 1190
Pottsville, Pennsylvania 17901

1

COUNSEL FOR APPELLEE

---

OPINION OF THE COURT

---

MANSMANN, *Circuit Judge*.

The Nuclear Regulatory Commission appeals from the dismissal of a petition for enforcement of its subpoena. The district court held that the action was rendered moot for lack of a justiciable case or controversy when the NRC closed its formal investigation of Oncology Services Corporation, a nuclear medicine licensee. Because an agency may seek information on mere suspicion that there is a violation of the law, we will vacate the order of the district court dismissing the petition and remand for a determination of the enforceability of the subpoena.

We are compelled to further comment on the standards for enforcing the subpoena given the district court's intention to conduct an *in camera* review of documents produced by Oncology Services in redacted form to determine the reasonableness of the redactions. The district court must enforce the subpoena so long as the requested information is reasonably related to a legitimate NRC inquiry or investigation. Thus, the purpose of any *in camera* review, if one need be conducted, is to determine whether the information sought is reasonably related to an inquiry that the NRC is authorized to conduct, not whether the redactions were reasonable.

In December of 1992, the Office of Investigation of the Nuclear Regulatory Commission[1] conducted an incident investigation regarding the November 21, 1992 death of a nursing home patient who had received radiation therapy at an Oncology Services' cancer treatment center. During that therapy, a radioactive source was placed in the patient's abdominal catheter but was not removed. The source of the radioactivity was discovered nearly one week later after it was removed from the patient and disposed of at a waste dump. The NRC's incident investigation team concluded that weaknesses in the Oncology Services radiation program were a contributing cause of the patient's death and caused subsequent radiation exposure to employees and the general public.

The NRC initiated a second investigation to determine whether Oncology Services intentionally violated NRC regulations during the period from June of 1990 to February 15, 1993. On February 25 and 26, 1993, the NRC served seven identical subpoenas, one to Oncology Services' headquarters in State College, Pennsylvania and the remainder to Oncology Services' treatment facilities located throughout Pennsylvania. The subpoenas requested information regarding Oncology Services' application to the NRC for its license, radiation safety training procedures and policies, purchase and repair records for radiation detection devices, training-related expense and travel

---

[1]     The Office of Investigation of the Nuclear Regulatory Commission is referred to as the NRC.

4

vouchers, employment applications of certain personnel, and business records related to Oncology Services' license. Oncology Services provided documents responsive to the subpoenas but objected to the production of other documents on grounds that they were not relevant to the NRC investigation. Despite its objections, Oncology Services produced additional documents in late July of 1993.

On August 24, 1993, the NRC served a second subpoena to Oncology Services' headquarters requesting the production of the balance of the documents sought in the first subpoena. The NRC sought information relating to Oncology Services' licensed activities, training policies and radiation equipment. The compliance date for the subpoena was September 13, 1993. By letter dated September 16, 1993, Oncology Services objected to requests for various categories of documents on grounds that the information was irrelevant to the NRC investigation, outside of the NRC's jurisdiction, unduly burdensome or had previously been responded to by Oncology Services. Oncology Services, however, never sought to quash the subpoena prior to the compliance date although the procedure for doing so was noted on the subpoena. Oncology Services produced redacted copies of the weekly activity reports, and notes and minutes of regional administrator meetings and medical director meetings. Oncology Services asserted that the redacted information related to non-licensed matters and therefore was not relevant to the NRC's investigation.

Oncology Services did not produce the balance of the

documents, causing the NRC to file a petition for summary enforcement of its administrative subpoena, pursuant to 42 U.S.C. § 2281, on November 15, 1993.  The district court initially granted enforcement but subsequently vacated that order to give Oncology Services time to brief the issue.  On March 9, 1994, the district court conducted an off-the-record hearing regarding the disputed materials to determine the reasonableness of the redactions.  The court identified the disputed materials on the record as:  (1) weekly activity reports and minutes of regional administrator and medical director meetings, (2) payroll information, and (3) resumes and employment applications received by Oncology Services.  The district court ordered that the first category of disputed materials be provided to the court for an <u>in camera</u> review to determine the reasonableness of the redactions. By letter dated May 11, 1994, the NRC informed the district court that the parties had agreed to the production of the second and third categories of documents and that the only remaining issue pertained to the <u>in camera</u> review of the weekly activity reports and the notes and minutes of regional administrator and medical director meetings.

The NRC issued a Report of Investigation dated May 25, 1994 based on the documentary evidence then in its possession. The Report indicated that the NRC "closed" its formal investigation of Oncology Services subject to reopening upon the district court's disposition as to disputed documents relating to the investigation.  By letter dated August 2, 1994 directed to the district court, the NRC inquired as to the status of the <u>in</u>

6

camera review. By letter dated August 16, 1994, Oncology

Services notified the district court that the NRC's May 25 Report

of Investigation rendered the subpoena enforcement action moot

because there was no justiciable case or controversy.

The NRC responded by letter dated September 22, 1994,

asserting that the subpoena enforcement action was not moot

merely because the NRC had issued the Report based on the

documentary evidence then in its possession. Rather, the NRC

closed the investigation with the report "so as not to further

impede other administrative actions involving the same licensee."
[2]The NRC noted that the Report left open the potential for

further inquiry stemming from the documents pending before the

district court at the time the Report was issued. In this regard

the NRC highlighted the testimony of Gerard F. Kenna, the NRC

investigator whose deposition was taken in connection with the

license suspension hearing, who testified:

```
Q:   How long was the ... investigation?
A:   From December of '92 ... until May of '94.
Q:   Is it now closed?
A:   Status is closed.
Q:   Does that mean its closed?
A:   There are some open matters that are listed in the
     report.
Q:   Okay, what are the open matters?
A:   There's some... matters before a District Court to
     be resolved, and the judge, to my knowledge has
     not ruled on those matters.
```

---

[2] The report was prepared in anticipation of the administrative hearing on Oncology Services' license suspension before the NRC's Atomic Safety and Licensing Board. Additionally, there were two relevant related administrative actions involving the same Oncology Services' materials license: In the Matter of Oncology Services Corp., No. 030-31765-EA and In the Matter of Indiana Regional Cancer Center, No. 030-30485-EA, both of which were subsequently settled.

(June 28, 1994 Deposition of Gerard F. Kenna at 57-58). The NRC still sought to review the disputed documents to assess their relevancy to the allegations supporting the investigation. If the NRC discovered new information from the review that bore on those allegations, the NRC was authorized to reopen the investigation.

The district court treated the August 16, 1994 letter from Oncology Services as a motion to dismiss the subpoena enforcement action as moot and the September 22, 1994 letter from the NRC as the NRC's opposition to the motion. The district court determined that the subpoena enforcement action was rendered moot given that there was no current controversy between the parties as a result of the NRC's May 25, 1994 Report of Investigation, which closed the formal investigation of Oncology Services. Despite the NRC's contention that it may reopen its investigation if such action is warranted after reviewing the documents at issue in the subpoena enforcement action, the district court concluded that its resolution of the enforcement action would serve to incite or initiate litigation rather than bring closure. Thus, the district court concluded there was no controversy remaining between the parties and dismissed the NRC's petition as moot.

The NRC appeals the district court's dismissal of the petition for enforcement as moot and its failure to grant summary enforcement of the subpoena absent a claim of privilege or a showing that the documents were irrelevant to any NRC investigation. The district court had jurisdiction pursuant to

8

42 U.S.C. § 2281 and 28 U.S.C. §§ 1331 and 1345.  We have jurisdiction over this appeal based on 28 U.S.C. § 1291.  Our standard of review in this matter is plenary.  Dole v. Trinity Industries, Inc., 904 F.2d 867, 870 (3d Cir.), cert. denied, 498 U.S. 998 (1990).

## II.

It is not necessary for the NRC to establish liability in order to seek to enforce a subpoena.  See Federal Deposit Ins. Corp. v. Wentz, No. 94-5556, 1995 WL 329921 at *3 (3d Cir. June 5, 1995).  The mere possibility of a new or continued investigation from the NRC's review of the disputed documents provided a sufficient basis to seek judicial enforcement of the NRC's subpoena.  The Supreme Court characterized the investigative power of administrative agencies as follows:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so.  Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry.  It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function.  It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.  When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform

9

itself as to whether there is probable violation of the law.

(Emphasis Added).  United States v. Morton Salt Co., 338 U.S. 632, 642-43 (1950).  See also United States v. Powell, 379 U.S. 48, 57 (1964).

The NRC is authorized to make such studies and investigations and obtain such information as necessary to assist it in exercising its statutory authority and any regulations thereunder.  42 U.S.C.A. § 2201(c) (West 1994).  This includes the authority to issue subpoenas to require any person to appear and produce documents at any designated place. Id.   The NRC delegated its investigative authority to the Office of Investigations, which is authorized to conduct investigations of licensees; to maintain current awareness of inquiries and inspections by other NRC offices; to identify the need for formal investigations; and to issue subpoenas where necessary or appropriate for the conduct of investigations.  10 C.F.R. § 1.36. The NRC broadly interprets its investigative authority, pursuant to 10 C.F.R. § 1.36, to include a continuum of activities from simple inquiries to formal investigations.  (Reply Brief of Appellant at 4).  This interpretation is entitled to deference. United States v. Westinghouse Electric Corp., 638 F.2d 570, 575 (3d Cir. 1980); United States v. Westinghouse Electric Corp., 788 F.2d 164, 171 (3d Cir. 1986).

In Morton Salt, the Supreme Court established that "[w]hen investigative . . . duties are delegated by statute to an . . . [agency], it . . . may take steps to inform itself as to

10

whether there is a probable violation of the law." Dole, 904 F.2d at 872 (quoting Morton Salt, 338 U.S. at 643). The NRC's pursuit of the disputed information after the Report was issued is consistent with its investigative authority. See 10 C.F.R. §1.36 (authorizing the Office of Investigation to conduct both investigations of licensees and identify the need for formal investigations); see generally Morton Salt, 338 U.S. 632 (1950); Dole, 904 F.2d at 872. Although the cover of the Report patently indicates that the formal investigation of Oncology Services was "closed", the body of the 80-page Report characterizes the district court's review of the disputed documents as an open matter. The NRC thereafter affirmed its interest in the disputed documents by inquiring in its August 2, 1994 letter to the district court as to the status of its in camera review. Contrary to the district court's conclusion, the NRC's investigative authority was not restricted to the formal investigation that was closed by the issuance of the May 25 Report of Investigation especially given that the Report was issued so as not to impede the progress of concurrent NRC proceedings involving Oncology Services' license. Thus, the district court had jurisdiction to consider the petition for enforcement of the subpoena based on the NRC's authority to conduct investigations of licensees to assure that there were no violations of NRC regulations pertaining to the use and handling of radioactive material.

III.

11

The requirements for judicial enforcement of an administrative subpoena duces tecum are that: (1) the inquiry must be within the authority of the agency, (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry. United States v. Westinghouse Electric Corp., 638 F.2d 570, 574 (3d Cir. 1980) (citing Morton Salt, 338 U.S. at 652). "Reasonably relevant" means merely "that the information must be relevant to some (any) inquiry that the [agency] is authorized to undertake", not that it must be reasonably relevant to the particular authorized inquiry. Dole, 904 F.2d at 872.

The district court must enforce the subpoena unless the information is "plainly incompetent or irrelevant to any lawful purpose of the [NRC] . . . ." Dole, 904 F.2d at 872 (quoting Endicott Johnson Corp. v. Perkins, 317 U.S. 501 (1943)). In Dole, although the employer safety records sought by the Occupational Safety and Health Administration were not relevant to OSHA's investigation of an employee complaint which authorized inspection of the workplace, the records were relevant to OSHA's general review of employer health and safety records to determine if a broader inspection was required. Here it was within the NRC's authority to continue a general investigation of Oncology Services subsequent to the issuance of the Report of Investigation. The NRC is best able to determine what is relevant to its investigation of Oncology Services' compliance with regulations for the safe handling and use of radioactive material. Indeed, Oncology Services acknowledged the relevance

12

of the disputed documents to the NRC investigation by producing them in redacted form in response to the NRC subpoena.  It only disputes the relevance of specific information contained in those documents on grounds that certain information does not pertain to the NRC license at issue in the investigation.  Oncology Services does not, however, raise any privacy interest or privilege that would preclude its compliance with the subpoena.  See Westinghouse, 638 F.2d at 578 (agency request for medical records implicated privacy rights).  Oncology Services bears a heavy burden to establish that enforcement of the subpoena will result in an abuse of judicial process.  FDIC, 1995 WL 329921 at *3.

The district court intended to conduct an in camera review of the redacted portions of the weekly activity reports and notes and minutes of administrative and medical meetings to determine the reasonableness of Oncology Services' redactions. The proper inquiry in a subpoena enforcement action, however, is whether the request was reasonably relevant to the NRC's authorized investigation.  The basis of Oncology Services' objections to complying with the subpoena, however, have no bearing on the enforceability of the subpoena.  As such, the in camera review was not necessary for the district court's disposition of the petition for enforcement.

IV.

We conclude that the district court erred in dismissing the petition for enforcement of subpoena for lack of a case or controversy.  Accordingly, we will remand this matter for

13

consideration of the merits of the petition.  The district court need not undertake an <u>in</u> <u>camera</u> review of the redactions to determine their "reasonableness" as Oncology Services asserts since their reasonableness has no bearing on the enforceability of the subpoena.