

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2004

# EEOC v. Bessemer Grp

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4049

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"EEOC v. Bessemer Grp" (2004). *2004 Decisions.* Paper 450.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/450

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4049
_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

BESSEMER GROUP INC.;
BESSEMER TRUST CO.,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge: The Honorable Katharine S. Hayden
(D.C. Civil No. 03-cv-04006)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2004

Before: SLOVITER, FUENTES, Circuit Judges, and POLLAK,* District Judge.

(Opinion Filed: July 29, 2004)
_____

OPINION OF THE COURT
_____

---

*The Honorable Louis H. Pollak, U.S. District Judge for the Eastern District of
Pennsylvania, sitting by designation.

FUENTES, Circuit Judge:

This is a subpoena enforcement action under the Age Discrimination in Employment Act of 1967 (ADEA). Petitioners, The Bessemer Group, Inc. and Bessemer Trust Company (collectively "Bessemer") were served with a subpoena to produce documents relevant to an investigation being conducted by the Equal Employment Opportunity Commission ("EEOC"). After Bessemer failed to comply, the EEOC initiated an action to enforce the subpoena in the District Court for the District of New Jersey. The matter was referred to a Magistrate Judge, who ordered the subpoena to be enforced. Subsequently, the District Court affirmed the Magistrate Judge's order and Bessemer now appeals from that decision. Because we find that the subpoena was issued in the course of an investigation pursuant to a legitimate purpose, we will affirm.

## I. Facts

This case arises out of an employment discrimination claim filed against Bessemer by a former employee, Florina Gualberto, in which she alleged that Bessemer discriminates on the basis of age in the severance packages offered to terminated employees in violation of the ADEA. Bessemer denies that it engages in any such practice.

Because the nature of the severance package is relevant in part to the current appeal, we briefly summarize it here. Gualberto was terminated four months before she turned 65, the age at which she would have retired and received retiree pension benefits from Bessemer. In an affidavit submitted to the EEOC, Gualberto stated that Bessemer

2

has a regular policy of offering severance benefits to employees upon termination. App. at 45. Gualberto also stated, however, that when an employee facing retirement is terminated, as she was, the amount of severance benefits is offset by the amount of retiree pension benefits to which the employee is entitled. This was the severance package Bessemer offered Gualberto upon her termination. She alleges this practice is discriminatory because younger employees who are terminated receive full severance benefits without any offset, and still receive retiree pension benefits when they reach the age of 65. Bessemer, on the other hand, asserts that the described offset practice is expressly permitted by the ADEA and therefore no discrimination occurs.

Upon receipt of Gualberto's complaint, the EEOC commenced an investigation into Bessemer's practices concerning severance benefits. On May 7, 2003 an EEOC investigator sent Bessemer a Request for Information, seeking information about other former employees and their severance packages. In response, Bessemer produced Gualberto's personnel file but refused to produce any other documents, claiming they were confidential. Subsequently, the EEOC issued an administrative subpoena on July 7, 2003, ordering production of the requested documents by July 21, 2003.

Bessemer refused to comply with the administrative subpoena, at which point the EEOC initiated an action to have the subpoena enforced in the District Court for the District of New Jersey. The District Judge referred the matter to a Magistrate Judge, who issued an order enforcing the subpoena on September 12, 2003.[1]

---

[1]The Magistrate Judge also issued two subsequent orders which are not relevant to the current appeal.

3

Bessemer appealed the Magistrate Judge's order to the District Court. After reviewing the Magistrate Judge's determination, the District Court affirmed the order enforcing the subpoena, finding that the EEOC had the authority to subpoena the documents pursuant to its investigation of unlawful employment practices. Bessemer now appeals the district court's affirmance of the Magistrate Judge's order.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review the order of the district court pursuant to 28 U.S.C. § 1291. Orders enforcing administrative subpoenas are considered "final" for purposes of this section because there is no ongoing judicial proceeding that would be delayed by an appeal. *Univ. of Med. & Dentistry v. Corrigan*, 347 F.3d 57, 63 (3d Cir. 2003).

There is disagreement between the parties as to which standard of review we should employ in our analysis. The EEOC argues that the appropriate standard is abuse of discretion, which is generally applied to review a district court's order enforcing an administrative subpoena.[2] *N.L.R.B. v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992). Bessemer argues, however, that we should review the District Court's order de novo because the district court improperly reviewed the Magistrate Judge's order. We find it unnecessary to resolve this dispute because, even if we accept Bessemer's proposal and review the record de novo, we would nevertheless affirm the District Court's order to enforce the subpoena.

## III. Discussion

---

[2]District courts review a magistrate judge's order de novo. *See N.L.R.B.*, 966 F.2d at 815.

An administrative subpoena should be enforced if the agency can show "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry is relevant, that the information demanded is not already within the agency's possession, and that the administrative steps required by the statute have been followed." *Univ. of Med. & Dentistry,* 347 F.3d at 64 (quoting *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995)). Furthermore, the request for information may not be overbroad or burdensome. *Id.*

Bessemer does not dispute that the subpoena itself is procedurally valid, that the information sought by the EEOC is generally relevant to investigating the charge of age discrimination, or that the EEOC does not already possess the requested information. Rather, Bessemer argues that the subpoena should be quashed because there is no legitimate purpose behind the EEOC's investigation. Specifically, Bessemer asserts that the practice of offsetting severance pay by the amount of pension benefits is expressly permitted by the ADEA, and thus the absence of a statutory violation renders the purpose of the investigation illegitimate. We disagree.

Bessemer's contention that its offset practice does not violate the ADEA is premised on section 623(l)(2)(A)(ii) of the Act, which states "[i]t shall not be a violation . . . of this section solely because following a contingent event unrelated to age the value of any additional pension benefits that are made available solely as a result of the contingent event unrelated to age . . . are deducted from severance pay made available as a result of the contingent event unrelated to age." 29 U.S.C. § 623(l)(2)(A)(ii) (2000). Bessemer

5

argues that this section specifically permits severance offset, and thus the EEOC has no legitimate purpose because it cannot ultimately prevail against Bessemer on the merits.

To bolster its argument, Bessemer attempts to analogize this case to other subpoena enforcement proceedings in which subpoenas were not enforced because courts found that the EEOC ultimately could not prevail in the underlying case as a matter of law. *See E.E.O.C. v. Ocean City Police Department*, 820 F.2d 1378 (4th Cir. 1987) (en banc) (quashing subpoena relating to Title VII charge because the charge was untimely), *vacated on other grounds*, 486 U.S. 1019 (1988); *E.E.OC. v. Group Health Plan*, 212 F. Supp. 2d 1094 (E.D. Mo. 2002) (quashing subpoena because the charge against the employer did not involve practices covered by the Americans with Disabilities Act).

Bessemer urges us to consider *McCambridge v. Bethlehem Steel Corp.,* 873 F. Supp. 919 (E.D. Pa. 1994), in which the district court ruled on a summary judgment motion that an employer's policy of reducing employees' severance allowances based on their eligibility for retiree health benefits did not violate the ADEA as a matter of law, in order to find similarly that the practice at issue in this case does not violate the ADEA.

First, we observe that retiree health benefits are addressed separately from retiree pension benefits in 29 U.S.C. § 623(l)(2)(A)(i). Second, we believe it is inappropriate to extend any analysis from *McCambridge* at this stage of the proceedings with the limited record before us. The EEOC responds that § 623(l)(2)(A)(ii) does not broadly permit severance pay to be offset by pension benefits, but rather, it narrowly permits offsets in very specific instances. In its brief, the EEOC states that "at this stage we know virtually

6

nothing about Bessemer's severance practices . . . and therefore we are not able to make any assessment about the company's compliance with the ADEA." Resp. Brief at 15. For example, the EEOC points out that when it first attempted to solicit information regarding these practices, Bessemer maintained that it does not even have a formal severance pay program. Distinguishing the cases cited by Bessemer in support of its proposition, the EEOC points out that in this case there is no way to determine at this point that any charge brought by the EEOC would ultimately fail as a matter of law.

We agree with the EEOC that more information is necessary before a dispositive legal determination can be made. At this point, it is not clear whether Bessemer is in compliance with the ADEA. As the Supreme Court stated in *Oklahoma Press Publishing Co. v. Walling*, "[t]he very purpose of the [administrative] subpoena and of the order . . . is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if . . . the facts thus discovered should justify doing so." 327 U.S. 186, 201 (1946).

Traditionally, administrative agencies are granted broad investigatory powers to enforce the laws within their purview. *See U.S. v. Powell*, 379 U.S. 48, 57 (1964); *U.S. v. Morton Salt Co.,* 338 U.S. 632, 642 (1950). Unlike the judiciary, an agency is not bound by the case or controversy requirement, and "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton*, 338 U.S. at 642-43. The District Court correctly enforced the subpoena to allow the EEOC to

7

investigate whether Bessemer's severance pay program violates the ADEA. We therefore

affirm the District Court's enforcement of the subpoena.