NATIONAL LABOR RELATIONS BOARD, Appellant

v.

Gary FRAZIER, an Individual.

No. 91–5475.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1991.

Decided June 15, 1992.

---

Eric G. Moskowitz, Deputy Asst. Gen. Counsel for Special Litigation, Adam Nemzer, (Argued), N.L.R.B., Washington, D.C., for appellant.

John K. Bennett (Argued), Paul J. DiMaio, Carpenter, Bennett & Morrissey, Newark, N.J., for appellee.

Before: SLOVITER, Chief Judge, SCIRICA and ROTH, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge.

This appeal concerns an enforcement proceeding brought by the National Labor Relations Board ("Board") to compel Gary Frazier to testify in an unfair labor practice proceeding. The United States District Court for the District of New Jersey referred the matter to a United States Magistrate Judge who denied the Board's application for enforcement of its subpoena ad testificandum. The district judge, applying the "clearly erroneous" standard, affirmed the magistrate judge's decision. On appeal, the Board argues that the district court should have reviewed the magistrate judge's decision de novo and enforced the Board's subpoena, as the evidence before the court demonstrated that Frazier's testimony was relevant to the pending unfair labor practice proceeding. Because we agree that Frazier's testimony is relevant to the Board's proceedings and that the district court employed the wrong standard of review, we will reverse the district court's judgment and will remand with instructions for the subpoena to issue.

### I.

The material facts in this case are few and basically undisputed. Gary Frazier's employer, Prudential Property Company ("Prudential"), owns in partnership certain properties located at Gateway Center in

Newark, New Jersey, where Prudential has its offices. Prudential contracted with Property Management Systems ("Systems"), an independent property management firm with headquarters in Houston, Texas, to manage the Gateway Center properties. Under the contract, Systems must secure cleaning and maintenance contracts for Gateway Center. Prudential retains the right to approve contracts proposed by Systems.

Early in 1989, Prudential approved the re-bidding of the contract for cleaning Gateway Center. At that time, Ogden–Allied Services Corporation ("Ogden") held the contract, and its cleaning employees were represented by Local 32B–32J of the Service Employees International Union, AFL–CIO ("the Union"). Ogden submitted the second lowest bid for the new contract. The lowest bidder was Control Services, Inc. ("Control").

In March 1989, Systems forwarded Prudential a proposal to award the cleaning contract to Control. The proposal stated, under the heading "Sources of Savings," that "[t]he unions currently in place will remain in place." App. 71. On May 5, 1989, both Barbara Green, Prudential's manager responsible for Gateway Center, and Gary Frazier, Green's superior and Prudential's new general manager, approved Systems' proposal. Frazier was responsible for the final approval of the contract award. In June 1989, Systems contracted with Control to clean Gateway Center. Control began its work under the contract that same month.

On June 23, 1989, the Union filed an unfair labor practice charge against Prudential, Systems, and Control. The Union alleged that earlier in June 1989, when Ogden employees applied to Control for jobs, Control hired less than a majority of the Ogden applicants, so that Control could avoid having to recognize the Union as the bargaining representative for its employees.

On November 14, 1989, the Union filed a second charge, alleging that Systems, acting as Prudential's agent, and Control had unlawfully recognized and entered into a collective-bargaining agreement with Local 97 of the Teamsters Industrial and Allied Workers Union ("the Teamsters") to represent the cleaning employees at Gateway Center. The Union claimed the agreement was illegal because the Teamsters did not represent an uncoerced majority of Control employees. Moreover, the Union alleged that Control was obligated to bargain with it rather than with the Teamsters.

Prudential objected to the unfair labor practice charge, arguing that the complaint alleged no unlawful conduct on its part. After considering this objection, the Board's Regional Office dismissed the charge against Prudential. The Union appealed the Board's determination to the Board's General Counsel. The appeal was denied.

On May 4, 1990, after investigating all of the charges filed, the Board, through the Regional Director for Region 22, issued an administrative unfair labor practice complaint against Control and Systems that restated the charges made by the Union. On January 2, 1991, Gary Frazier of Prudential was served with a subpoena to testify at the proceedings. The Board issued Frazier's subpoena at the request of the Union. On January 3, 1991, Barbara Green of Prudential was served with a subpoena to testify. The Board issued Green's subpoena on its own behalf. On January 4, 1991, counsel for Prudential filed a petition with the Board to revoke the subpoena of Frazier. Counsel for Prudential contended that Frazier's testimony was not relevant to the proceedings as the Board's complaint did not relate to Prudential but concerned whether Control or Systems had engaged in unfair labor practices.

The Board's proceedings formally commenced on January 7, 1991. Green testified voluntarily after the Board informed counsel for Prudential that Green's examination would relate only to the circumstances surrounding her signing the May 5, 1989, proposal which awarded the cleaning contract to Control. At the conclusion of Green's testimony, the Administrative Law Judge ("ALJ") heard argument on Prudential's petition to revoke Frazier's subpoena.

The ALJ denied the petition but said that any questioning of Frazier would be limited in scope.

Frazier, however, still refused to testify, and the Board applied to the United States District Court for the District of New Jersey, pursuant to Section 11(2) of the National Labor Relations Act, 29 U.S.C. § 161(2), for an order requiring Frazier to obey the subpoena. The district court referred the Board's application for subpoena enforcement to a United States Magistrate Judge. After considering the submissions of the parties, the magistrate judge found that to enforce the subpoena, the Board must demonstrate that the information sought from Frazier relates to a matter under investigation and is crucial to the Board's proceedings. The magistrate judge concluded that as Frazier's testimony could relate only to his employment with Prudential—which was not a party to the Board's complaint—his testimony was not crucial to the unfair labor practice proceeding against Control and Systems. As the Board had not met its burden of showing how Frazier's testimony was related or crucial to the proceedings, the magistrate judge denied enforcement of the subpoena.

The district court affirmed the magistrate judge's ruling after reviewing the Board's Objections to the Magistrate's Letter-Order and Opinion and Frazier's Response thereto. The court concluded that under 28 U.S.C. § 636(b)(1) and Local Rule 40 A for the District of New Jersey, the Board's application was a nondispositive motion that warranted review under a clearly erroneous or contrary to law standard. The district court refused the Board's request to review de novo its application for subpoena enforcement.

## II.

■ The district court had jurisdiction over the subpoena enforcement proceeding pursuant to Section 11 of the National Labor Relations Act, 29 U.S.C. § 161. The Board writes that we have jurisdiction over its appeal pursuant to 28 U.S.C. §§ 1291 and 1294. Though Frazier concurs, he raises an indirect challenge to our jurisdiction

when he contends that the district court's decision was collateral to the Board's pending unfair labor practice proceedings. We find that the pending agency proceeding has no bearing on our jurisdiction. The proceeding brought by the Board in the district court was in itself an independent proceeding which could have had only two possible outcomes. The district court could either have quashed the subpoena or have ordered Frazier to comply with its terms. The court's order, as it affirmed the magistrate judge's decision to quash the subpoena, satisfies the finality requirement of section 1291.

■ A district court should enforce an agency subpoena if the subpoena is for a proper purpose, the information sought is relevant to that purpose, and statutory procedures are observed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). "Courts must insist that the agency 'not act arbitrarily or in excess of [its] statutory authority....' " *N.L.R.B. v. Interstate Dress Carriers,* 610 F.2d 99, 111 (3d Cir. 1979) (quoting *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946)).

■ We must affirm a district court's decision to enforce or quash a Board's subpoena unless we find that the district court abused its discretion. *N.L.R.B. v. G.H.R. Energy Corp.,* 707 F.2d 110, 113 (5th Cir. 1982) (citing, *e.g., N.L.R.B. v. Friedman,* 352 F.2d 545, 574 (3d Cir.1965)). An abuse of discretion arises when "the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *International Union v. Mack Trucks, Inc.,* 820 F.2d 91, 95 (3d Cir.1987).

## III.

■ Initially, we must determine the proper legal standard for review by the district court of a magistrate judge's decision to deny enforcement of an agency subpoena. As that standard depends on how an enforcement proceeding fits within the schema set forth in the jurisdictional

provisions of the Federal Magistrate's Act, 28 U.S.C. § 636, we must look to the Act for guidance.

The Act distinguishes between two categories of matters that a district judge can refer to a magistrate judge. Under 28 U.S.C. § 636(b)(1)(A) and its corollary in the Local Rules for the District of New Jersey, Local Rule 40 A(1), a district judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except for eight specified motions. The "excepted" motions include motions to dismiss for failure to state a claim upon which relief can be granted and motions for summary judgment. Under section 636(b)(1)(B) and its corollary, Local Rule 40 A(2), a district judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to the court proposed findings of fact and recommendations for the disposition of the "excepted" motions. The statute thus distinguishes between regular pretrial matters, which a magistrate judge may decide, and those dispositive matters which have a preclusive effect on the parties, about which the magistrate judge may only make a recommendation to the court. Congress crafted this distinction to assure that Article III judges retain the ultimate adjudicatory power over dispositive motions. *See,* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6171.

To preserve these principles, the statute effects a similar distinction in the review which a district court accords a magistrate judge's work. Under section 636(b)(1)(A) and Local Rule 40 A(1), a district judge may reconsider a magistrate judge's decision where it has been shown to be clearly erroneous or contrary to law. However, a district judge must review de novo those portions of the magistrate judge's report or recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C) and Local Rule 40 A(2). In essence, the statute and local rule allow a magistrate judge to hear and determine nondispositive motions and to recommend decisions to the court on dispositive motions. These recommendations are subject to a heightened standard of review.

A district judge may assign additional duties to a magistrate judge under section 636(b)(3).[1] The Board's enforcement proceeding may have been properly designated to a magistrate judge under this section, as the proceeding was neither a pretrial matter for a magistrate judge's disposition under section 636(b)(1)(A) nor one of the eight categories of excepted motions covered by section 636(b)(1)(B). To preserve the adjudicatory role of Article III judges, matters referred under section 636(b)(3) would still be subject to review under the two standards of review set forth above. If the matter referred were more akin to a pretrial motion, the district court should review using the clearly erroneous or contrary to law standard. However, if the matter referred more closely resembles one of the eight excepted motions, the district court should employ de novo review. In most matters referred under this section the magistrate judge's duties will be clear; the district court's order of reference sets forth the type of action the court wishes from the magistrate judge.[2]

Neither party disputes that under 28 U.S.C. § 636(b) and Local Rule 40 A the district judge had the authority to refer the Board's action to compel testimony to a magistrate judge. However, the District of New Jersey Clerk's pro forma Notice of Allocation and Assignment does not indicate the provision on which the court relied in referring the enforcement proceeding to the magistrate judge. From the face of the notice, we cannot determine whether the district court considered the enforce-

---

1. That section provides:

    A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and Laws of the United States.
    28 U.S.C. § 636(b)(3).

2. The enforcement proceeding additionally could have been referred to the magistrate under section 636(c)(1). However, jurisdiction under that section requires the consent of the parties, and the record contains no indication that the parties consented here to the magistrate's jurisdiction.

ment proceeding to be a nondispositive or a dispositive motion. No reference to section 636(b) is made. The notice simply informs the parties that all discovery matters arising from their case will be assigned to a magistrate judge.

While a motion to enforce a subpoena arising in a civil action would be a routine matter which a magistrate judge could dispose of as a nondispositive motion, the Board's enforcement proceeding was not part of a larger case before the court. Rather, the enforcement proceeding arose from a pending dispute that was not before the court. Yet, our reading of the pro forma Notice suggests that the Clerk assigned the Board's enforcement proceeding to the magistrate judge as if it were just such a pretrial discovery dispute.[3] Moreover, the magistrate judge treated the matter as a basic discovery dispute and rendered a decision denying the Board's motion to enforce the subpoena against Frazier rather than recommending such a solution to the court.

Though the Board filed Objections to the Magistrate's Letter–Order and Opinion, as if the magistrate judge's decision were a recommendation to the court on a dispositive motion pursuant to section 636(b)(1)(B), the district court determined that under Local Rule 40 A for the District of New Jersey and section 636(b)(1), the Board's enforcement action was a nondispositive motion. The district court treated the magistrate judge's order as a nondispositive motion because the Board's application to enforce a subpoena did not fall within the eight categories of motions enumerated in 40 A(2) as dispositive motions. Based on that determination, the court decided that the Board's objections were in fact an appeal, and the court applied a clearly erroneous or contrary to law standard of review.

We cannot accept the district court's literal reading of the statute and Local Rules. The failure of 28 U.S.C. § 636(b)(1)(B) and Rule 40 A(2) to list the Board's subpoena enforcement proceeding as a dispositive matter subject to de novo review does not mean the Board's action should be deemed nondispositive. A review of the "excepted" matters in section 636(b)(1)(B) and Local Rule 40 A(2) suggests by analogy that a court should employ the heightened de novo standard to review a magistrate judge's order which quashes an agency's subpoena. As noted above, under section 636(b)(1)(A) and Local Rule 40 A(2), a magistrate judge may not issue final orders for these eight "dispositive" pretrial matters. The "excepted" matters include motions for summary judgment and motions to dismiss for failure to state a claim. As decisions to grant summary judgment or to dismiss a case dispose of the matter before the district court, both the statute and local rule require that the magistrate judge submit proposed recommendations to the district court for its review.

The proceeding to enforce an agency subpoena is like a motion to dismiss; once the court grants a motion to dismiss or compels compliance with a subpoena, the court disposes of the entire case before it. If the court denies the motion to dismiss, the case may proceed toward trial. The proceeding has a final effect on the rights of the parties; either they must continue to contest the case or the case is over. Yet in a proceeding to enforce a subpoena, the case before the district court is over regardless of which way the court rules. Once the court grants or quashes the agency subpoena, it determines with finality the duties of the parties. The district court proceeding is admittedly collateral to the Board's pending administrative proceeding,

---

**3.** While section 636(b)(1) allows a *district court judge* to designate a magistrate to determine nondispositive motions and to make recommendations on dispositive motions, Local Rule 40 reinterprets the statute, consistent with judicial economy, to allow each magistrate to perform all duties assigned by the *court* which are consistent with the Constitution and the laws of the United States. Those duties include deciding nondispositive motions and making recommen-

dations to the district court on dispositive motions, as well as the broader possibilities provided in section 636(b)(3). While the local rule still envisions that judges will assign certain matters to a magistrate directly, its broad language and its use of "court" rather than "judge" nonetheless departs from the statutory notion that district court judges will have the primary role in designating matters for the magistrates' attention.

but the question of whether or not to enforce the subpoena is the only matter before the court. The court's decision seals with finality the district court proceeding and is subject to appellate review.

Unlike the pretrial motions which district judges refer to magistrate judges, in this case the question of subpoena enforcement was not ancillary to the Board's main action in the district court. Rather, the Board applied to the district court in a special proceeding, under 29 U.S.C. § 161(2), the sole purpose of which was to aid the Board in compelling production of evidence and attendance of witnesses. Therefore, it was not appropriate for the district court to apply the clearly erroneous or contrary to law standard of review set forth in section 636(b)(1)(A) when it reviewed the magistrate judge's decision. The magistrate judge's decision was not a pretrial determination of a motion collateral to the main proceeding before the district court, but a final decision which disposed entirely of the Board's business before the court. The district court should have reviewed the magistrate judge's decision accordingly.

We hold that, because the Board's motion was dispositive, the district court erred when it reviewed the magistrate judge's decision using the clearly erroneous standard.[4] The district court should have applied the de novo standard which both section 636(b)(1)(C) and Local Rule 40 A(2) state is appropriate for dispositive motions.[5]

### IV.

■ Our inquiry does not end with the determination that the district court should have reviewed the Board's request for subpoena enforcement de novo. We must determine whether the district court erred in finding that the subpoena issued to Frazier did not relate to matters pending in the Board's unfair labor practice proceedings. Our conclusion will determine whether we will affirm the district court's decision or remand the case for further proceedings.

The Board's complaint against Systems and Control alleged two instances of unlawful conduct—that Systems and Control refused to rehire the cleaning employees formerly represented by the Union in order to avoid a collective-bargaining obligation to the Union, and that Systems and Control unlawfully entered into a collective bargaining agreement with the Teamsters. The complaint alleged that both instances of unlawful conduct occurred after Prudential approved the award of the cleaning contract to Control in May 1989.

On appeal the Board contends that the district court erred by failing to inquire whether the testimony sought from Frazier would relate to Systems and Control's allegedly unlawful labor practices. The Board argues that the court looked only to what light, if any, Frazier could shed on whether Systems acted with an illegal purpose in recommending Control for the cleaning contract activity prior to May 1989.

Notwithstanding Frazier's arguments to the contrary, we find that the district court did err in concluding that Frazier's testimony would be unrelated to the Board's proceedings. The Board supplied the district court with a copy of its complaint against Systems and Control together with its Objections to the Magistrate's Letter–Opinion and Order. In these objections, the Board specified June 1989 as a relevant time period about which it sought to question Frazier. The Board argued that Frazier was subpoenaed "based upon [the Union's] belief that he had knowledge about Control's decision to recognize the Teamsters, rather than [the Union]. This belief was based upon Green's testimony that sometime after Prudential approved the award, [Green]

---

4. Our decision would be no different if the district court had referred the proceeding to the magistrate under section 636(b)(3).

5. Frazier argues that because the district court reviewed the same documents as the magistrate judge, the court did in fact apply a de novo standard. For reasons we discuss in Part IV, *infra*, we find that, even if the district court did apply a de novo standard, reversal is still necessary because its review was based on an erroneous finding of fact regarding the purpose of Frazier's testimony.

reported to Frazier [Systems'] warning of potential union activity...." App. 62. The district court, in its discussion, did not mention that Green's testimony suggested that she had informed Frazier of the labor dispute after the contract was awarded to Control. The court's Letter–Opinion focused entirely on what Green and Frazier knew at the time they approved the contract.

Had the court made a de novo determination as required under section 636(b)(1)(C), when the Board objected to the magistrate judge's recommendation, the court would have "consider[ed] the record which has been developed before the magistrate and ma[d]e [its] own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." H.R.Rep. No. 1609, 94th Cong., 2d Sess., 3 (1976), *reprinted in* 1976 U.S.S.C.A.N. 6163 (quoted in *United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980)).

The district court record contained the relevant portion of Green's testimony in the unfair labor practice proceeding. Before the ALJ, Green testified that Prudential required the cleaning service contractor be unionized, but that Prudential had no preference as to which union would represent the employees. Green stated that her discussions with Frazier prior to his approval of the contract award pertained to the cost and level of services to be provided under the contract. Green testified that after approval of the contract, Systems' general manager, Kip Marshall, warned her that Prudential may experience union problems at Gateway Center. Though Green could not remember the exact date of her conversation with Marshall, she noted that there would have been some internal communication about their conversation. App. 130. Finally, in response to the question, "Who did you talk to about your conversation with Mr. Marshall?" Green answered, "It would have been Gary Frazier." App. 132.

The parties dispute the meaning of Green's testimony. Frazier argues that Green's last answer implies that if she had known about potential union problems she would have reported the information to Frazier. The Board argues that Green meant that she did know of the potential for problems and that Frazier would have been the person with whom she had discussed the matter. Given that Green testified to knowledge of the potential for labor problems at Gateway Center in the period after the new contract had been approved and her habit of reporting conversations about Gateway Center with others, we find the Board's interpretation convincing. Further, the Board's reading bolsters its assertion that the purpose of its subpoena request was to learn what Frazier knew in the period after the contract was awarded.

In sum, we find that Frazier's testimony may be related to or relevant to the Board's allegations in its unfair labor practice complaint against Systems and Control. The Board did not seek Frazier's testimony regarding the decision to approve Systems' recommendation to awarded the cleaning contract to Control. Rather, the Board sought Frazier's testimony regarding his knowledge of the June 1989 labor dispute.

█ As a final consideration, Frazier seeks to evade compliance with the Board's subpoena by alleging that the Board sought the subpoena for an improper purpose. This court has stated that the burden on a party seeking to dodge compliance with a subpoena "is not a meager one." *N.L.R.B. v. Interstate Dress Carriers, Inc.,* 610 F.2d 99, 112 (3d Cir.1979). Such a party must come forward with facts suggesting that the subpoena is intended solely to serve purposes outside the purview of the jurisdiction of the issuing agency. "If the party seeking to quash the subpoena does not satisfy these threshold requirements, a district court should, in a § 11(2) enforcement case, act summarily." *Id.*

Frazier contends that the Board does have an improper purpose, namely, to relitigate allegations against Prudential that were dismissed by the Board's General Counsel. While this court has stated that the enforcement of a subpoena for an improper purpose constitutes an abuse of the

court's process, *see United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166–67 (3d Cir.1986), and can be raised as a defense against summary enforcement, we do not believe the Board seeks Frazier's testimony for the improper reasons Frazier suggests.

At oral argument, counsel for Frazier asserted that Frazier refused to testify in part to prevent the questioning of other Prudential employees in the Union's effort to link Prudential with the unfair labor practices charged in the Board's complaint. If Frazier testified and provided little relevant testimony, so argued his counsel, then the Union would encourage the Board to subpoena another Prudential employee. Frazier believes that Green's testimony alone is sufficient for the purposes of the Board's proceedings against Systems and Control.

We disagree. While the court has no opinion as to the value of Frazier's testimony, we merely require that Frazier testify because his testimony appears to be relevant to the unfair labor practice proceeding. If the Board issues further subpoenas to Prudential employees, counsel for Prudential or those employees will be able to argue about the relevancy of the requested testimony at the appropriate time.

## V.

We will reverse the district court's judgment that the Board is not entitled to enforce its subpoena of Gary Frazier, and we will remand for proceedings consistent with this opinion.