**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**CABLE CAR ADVERTISERS, INC. d/b/a Cable Car Charters, et al., Defendants.**

**No. C–04–0014 MISC CRB (EMC).**

United States District Court, N.D. California.

May 7, 2004.

Barbara O'Neill, Contempt Litigation and Compliance Branch, Washington D.C., Lawrence Alioto, San Francisco, CA, for Plaintiff/Defendant.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

BREYER, District Judge.

The Court has reviewed Magistrate Judge Edward M. Chen's Report and Recommendation regarding defendant Cable Car Advertiser's, Inc.'s ("Cable Car") motion to modify and quash subpoenas and plaintiff National Labor Relations Board's ("Board") cross-application to compel compliance with investigative subpoenas. Cable Car has submitted objections to the Report and Recommendation. The Court

has carefully considered the memoranda submitted by the parties, and concludes that oral argument is unnecessary, *see* Local Rule 7–1(b). The Court finds the Report and Recommendation accurate, thorough, and well-reasoned, and ADOPTS it in every respect, except the Court finds that the costs and attorneys' fees are inconsequential, and thus orders the parties to bear their own costs and attorneys' fees. The Court's order regarding attorneys' fees and costs is made without prejudice. The Board may renew its motion for attorneys' fees and costs should further attorneys' fees and costs be incurred.

Accordingly, the Court hereby orders the following:

1. Cable Car's motion to modify and/or quash the subpoenas is hereby DENIED.

2. Cable Car shall comply with NLRB Subpoena No. B–441333 by producing all of the responsive documents within ten days of the issuance of this order.

3. Cable Car shall comply with NLRB Subpoenas Nos. A–666912 and A–666913 by producing Phil Wright and Christine Bennett for deposition. The parties should meet and confer to agree upon a date, but the depositions shall be taken within thirty days of the issuance of this order.

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION RE DEFENDANT'S MOTION TO MODIFY AND QUASH SUBPOENAS AND PLAINTIFF'S CROSS APPLICATION TO COMPEL COMPLIANCE TO INVESTIGATIVE SUBPOENAS; PLAINTIFF'S INFORMATIVE MOTION CONCERNING SETTLEMENT (Docket Nos. 1, 3, 12)**

CHEN, United States Magistrate Judge.

Defendant Cable Car Advertisers, Inc. ("Cable Car") has filed a motion to modify and quash subpoenas served on it by Plaintiff the National Labor Relations Board ("Board"). The Board has in turn filed a cross-application to compel compliance with the subpoenas. This case was referred to this Court on January 21, 2004. On February 25, 2004, the Court heard arguments on Cable Car's motion and the Board's cross-application. Having considered the parties' briefs and their accompanying submissions, and having considered the arguments of counsel, the Court hereby makes the following report and recommendation to the District Court.

## I. FACTUAL & PROCEDURAL BACKGROUND

On November 21, 1996, the Board issued its decision and order, finding that Cable Car had violated §§ 8(a)(1), (3) and (5) of the National Labor Relations Act ("NLRA").[1] *See generally In re Cable Car Advertisers, Inc.*, 322 NLRB 554, 1996 WL 678503 (1996). The Board ordered that Cable Car make whole certain employees for losses resulting from its unfair labor practices.[2] Thereafter, on February 20,

---

**1.** Section 8(a)(1) of 29 U.S.C. § 158 states: "It shall be an unfair labor practice for an employer—(1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 7 [29 U.S.C. § 157 (stating that employees shall have right to self-organization, etc.)]." 28 U.S.C. § 158(a)(1). Section 8(a)(3) goes on to state that it shall be an unfair labor practice for an employer—by discrimination in regard to hire or tenure or any term or condition of employ-

ment—to encourage or discourage membership in any labor organization. *See id.* § 158(a)(3).

**2.** The Board adopted the findings and conclusions of Administrative Law Judge Schmidt that Cable Car unlawfully reduced employee's hours, discharged, and/or laid off employees organized with the union following the union's consumer boycott of Cable Car. *See Cable Car Advertisers, Inc.*, 322 NLRB at 554–55, 1996 WL 678503.

1998, the Ninth Circuit entered its judgment enforcing the Board's order. *See Cable Car Advertisers, Inc. v. NLRB,* 139 F.3d 903, 1998 WL 75077, at *1 (9th Cir. 1998).

A controversy subsequently arose over the amount of backpay due under the terms of the Board's order of November 21, 1996, and a new hearing was ordered on January 13, 1999. On March 7, 2001, Administrative Law Judge Jay R. Pollack issued a supplemental decision, detailing his findings and conclusions regarding the backpay formulas and any affirmative defenses. The Board affirmed the judge's rulings, findings, and conclusions and adopted the ALJ's decision on October 29, 2001.

On December 18, 2002, the Ninth Circuit issued a judgment against Cable Car, requiring it to pay to the Board $141,479.06 plus interest, representing the backpay owed under the formulas previously calculated. *See Cable Car Advertisers, Inc. v. NLRB,* 53 Fed.Appx. 467, 468, 2002 WL 31855910, at *1 (9th Cir.2002). To this date, Cable Car has made no payments to the Board in satisfaction of the debt. Cable Car claims that it is unable to make any payments in satisfaction of the judgment.

On January 6, 2004, in an effort to enforce the judgment, the Board, pursuant to 29 U.S.C. § 161(1) of the NLRA, issued a series of investigative subpoenas directed at Cable Car and its managing agents, Christine Bennett and Phil Wright: NLRB Subpoena Nos. B–441333, A–666912 and A–666913.[3] Through the subpoenas, the Board sought the production of documents and deposition testimony related to Cable Car's financial viability, its assets, and its business relationship with a related entity, Gridley Realty. Subpoena No. B–441333 ordered that documents be produced to the Board on January 16, 2004, and Subpoenas Nos. A–666912 and A–666913 ordered the attendance of Ms. Wright and Mr. Bennett for depositions on January 20, 2004.

Ten days after issuance of the subpoenas, on January 16, 2004, counsel for the Board received a phone call from Cable Car's counsel. Cable Car's counsel stated that he needed additional time to produce the documents and that Ms. Bennett and Mr. Wright would not appear at their scheduled depositions on January 20. When counsel for the Board said that she was unwilling to extend the time for compliance with the investigative subpoenas, Cable Car's counsel stated that he was planning to file this present motion. Based on those statements, counsel for the Board cancelled her trip to San Francisco for the depositions. On January 16, 2004, Cable Car filed the present motion.

On February 25, 2004, this Court heard arguments between the parties regarding the issues raised in Cable Car's motion and the Board's cross-application.[4] Cable Car objects to the subpoena, asserting it should not be required to identify its customers in the documents sought by the Board. Cable Car also argues it should not be required to produce the two witnesses for depositions until this issue is

---

**3.** Arthur Gridley owns Cable Car (as well as another business called Gridley Realty) but is currently hospitalized and so unable to operate Cable Car. Ms. Bennett, Gridley's daughter, and Mr. Wright, Gridley's son, are currently running the Cable Car operation on a day-to-day basis. *See* Opp'n at 4.

**4.** Cable Car and the Board are currently involved in two other pieces of litigation, which are also the subject of the parties' settlement discussions. First, there is a contempt proceeding in the Ninth Circuit; second, there are two consolidated unfair labor practice proceedings, which were initiated in 1993 and which have proceeded through backpay determinations. *See* Reply at 2.

resolved. Notwithstanding the fact that Cable Car only objected to the request as it pertained to customer identification, it has yet to produce other categories of documents requested.

## II. DISCUSSION

### A. Jurisdictional Issues

1. *Magistrate Judge's Jurisdiction to Determine Administrative Enforcement Proceedings*

■ At the February 25 hearing, Cable Car raised the issue whether a magistrate judge has the authority to enforce an investigative subpoena. Specifically, Cable Car argued that, under *NLRB v. Frazier*, 966 F.2d 812 (3d Cir.1992), a district judge can refer issues regarding enforcement of an investigative subpoena to a magistrate judge but that approval and enforcement of any subpoena must ultimately be done by a district judge.

Under the Federal Magistrates Act, 28 U.S.C. § 631 ("Magistrates Act"), a district court may refer three types of matters to a magistrate judge without the consent of the parties. First, the court may refer any "pretrial matter" except for the eight listed dispositive motions for final determination.[5] *See* 28 U.S.C. § 636(b)(1)(A). Second, the court may refer any of the excepted dispositive motions as well as certain applications for post-trial relief for evidentiary hearings and/or a report and recommendation. *See id.* § 636(b)(1)(B). Third, the court may assign additional duties "not inconsistent with the Constitution and laws of the United States." *Id.* § 636(b)(3).

In *Frazier*, the issue was whether the district court applied the wrong standard of review to the magistrate judge's decision to deny enforcement of the NLRB subpoena. *See Frazier*, 966 F.2d at 815. The district court had treated the magistrate judge's order as a nondispositive motion because the Board's application to enforce did not fall under one of the eight categories of motions of the Magistrate's Act and the Local Rules. The Third Circuit disagreed. *See id.* at 816. It reasoned that a motion to enforce an investigative subpoena is like a motion to dismiss because, once a court compels compliance, the court disposes of the entire case before it. *See id.* at 817. Also, the question of subpoena enforcement was not ancillary to the Board's main action so it was not like a pretrial motion typically referred to a magistrate judge. *See id.* at 818. The Third Circuit therefore concluded that the magistrate judge's decision regarding enforcement was a final decision that disposed of the case, and thus the district court should have applied the de novo standard under the Magistrate's Act for review of a dispositive motion. *See id.*

Similarly, in *Strong v. United States.*, 57 F.Supp.2d 908, 913–14 (N.D.Cal.1999), the district court adopted the magistrate judge's opinion that, barring consent, the magistrate judge could issue only a report and recommendation regarding the taxpayers' petition to quash IRS summonses issued to them. The magistrate judge explained that a petition to quash is analogous to a dispositive motion to dismiss because it is not ancillary to a larger proceeding but is the entire proceeding itself. *See id.* at 913–14. Once the petition is decided, the matter is over. *See id.* at 913. Therefore, the magistrate judge concluded that she would issue only a report and

---

5. These eight motions are motions for injunctive relief; for judgment on the pleadings; for summary judgment; to dismiss or quash an indictment or information made by the defendant; to suppress evidence in a criminal case; to dismiss or to permit maintenance of a class action; to dismiss for failure to state a claim upon which relief can be granted; and to involuntarily dismiss the action. *See* 28 U.S.C. § 636(b)(1)(A).

recommendation and not a final judgment. *Id.* at 914.

As in *Frazier* and *Strong*, the matter in the instant case also appears to be a dispositive motion. Although there is a contempt proceeding in the Ninth Circuit, this subpoena enforcement proceeding is not ancillary to the contempt proceeding. When this motion is decided, the case will effectively be over. Therefore, the proper course for this Court is to issue a report and recommendation to Judge Breyer with respect to Cable Car's motion to quash and modify subpoenas and the Board's cross-application to compel compliance with the subpoenas.

### 2. Subject Matter Jurisdiction

■ Title 29 U.S.C. § 161(1) of the NLRA states that any petition to revoke a subpoena must be made to the Board within five days of receipt of the subpoena. If the party refuses to comply with the subpoena, then, under 29 U.S.C. § 161(2), the Board must seek its enforcement in district court. District courts only attain jurisdiction to enforce Board subpoenas upon "application of the Board" in any district court of the United States within the jurisdiction of which the inquiry is carried on. Therefore, a party receiving a subpoena in a subpoena enforcement proceeding may raise appropriate defenses once in district court but has no ability itself to file an independent motion such as a motion to quash. *See Wilmot v. Doyle,* 403 F.2d 811, 815 (9th Cir.1968) (holding that, under 29 U.S.C. § 161, only the Board and not private litigants could apply to the district court for enforcement of subpoenas); *see also NLRB v. Dutch Boy, Inc.,* 606 F.2d 929, 932 (10th Cir.1979) (affirming both the enforcement of the NLRB's subpoena and the district court's dismissal of Dutch Boy's cross-application to enforce their subpoena for lack of jurisdiction).

■ At the February 25 hearing, Cable Car admitted that it failed to follow the proper administrative procedures in seeking revocation or modification of the subpoenas by filing its motion in district court. However, as stated by the Board, by filing a cross-application to enforce the subpoenas in district court, the Board has waived its objection to Cable Car's improperly filed motion. Hence, this Court has jurisdiction to consider Cable Car's motion as well as the Board's cross-application.

### B. Enforcement of Investigative Subpoenas

#### 1. Legal Standard Governing the Issuance of Investigative Subpoenas

The NLRB is the agency empowered by Congress to prevent any person from engaging in any unfair labor practice (listed in 29 U.S.C. § 158) affecting commerce. *See* 29 U.S.C. § 160(a). The NLRA provides that, as part of the Board's power to investigate possible unfair labor practices, the Board "shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question." 29 U.S.C. § 161(1). The Board "shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application." *Id.*

This subpoena power "enables the NLRB to 'get information from those who best can give it and who are most interested in not doing so.'" *Brooklyn Manor Corp. v. NLRB,* No. 99 MC 117(RJD), 1999 WL 1011935, at *2, 1999 U.S. Dist. LEXIS 16310, at *7 (E.D.N.Y. Sept. 29, 1999) (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 642, 70 S.Ct. 357, 94

L.Ed. 401 (1950)). The NLRB's powers have also been equated with that of a grand jury which can investigate on mere suspicion that the law is being violated or to be assured that it is not. *See Brooklyn Manor,* 1999 WL 1011935, at *2, 1999 U.S. Dist. LEXIS 16310, at *7. This broad power allows the NLRB to make any investigations it deems necessary to determine whether a person or entity is, has engaged, or will engage in labor practices in violation of the NLRA.

■ Significant to the matter at bar, the subpoena power of the Board also extends to investigations before and after unfair labor proceedings and includes investigations seeking enforcement of judgments or settlements against violators. *See Brooklyn Manor* at 1999 WL 1011935, at *4–5, 1999 U.S. Dist. LEXIS 16310, at *12–15 (granting Board's order to compel compliance with the subpoenas investigating transfer of funds between Brooklyn Manor and a subsidiary in an attempt to gain information leading to the collection of the settlement); *cf. NLRB v. North Bay Plumbing, Inc.,* 102 F.3d 1005, 1008 (9th Cir.1996) (" 'The Board's power to issue investigatory subpoenas does not depend on the filing of a complaint.' ") (quoting *NLRB v. Carolina Food Processors, Inc.,* 81 F.3d 507, 512 (4th Cir.1996)).

### 2. Court's Scope of Inquiry

■ The Court's scope of inquiry in an agency subpoena enforcement proceeding is narrow. *See NLRB v. North Bay Plumbing, Inc.* 102 F.3d 1005, 1007 (9th Cir.1996) (finding that the investigative subpoenas were not overly broad and affirming their enforcement). The critical questions that the court must consider are: (1) whether Congress has granted the authority to investigate; (2) whether proce-

dural requirements have been followed, and (3) whether the evidence is relevant and material to the investigation. *See id.* (citing *EEOC v. Children's Hosp. Med. Ctr. of Northern Cal.,* 719 F.2d 1426, 1428 (9th Cir.1983) (en banc)). If this test is met, then the subpoena must be enforced unless the responding party can prove that the inquiry is unreasonable because it is unduly burdensome or overly broad. *See North Bay Plumbing,* 102 F.3d at 1008. Cable Car's objection to the Board's subpoenas is essentially based on the third element above—*i.e.,* relevance and materiality—as well as undue burden. More specifically, Cable Car argues that it should not have to produce documents that reveal the names of its customers. Cable Car also argues that it should not have to produce Ms. Bennett and Mr. Wright for deposition until after the Court has ruled on the issue regarding the names of its customers.

### a. Customers' Names

■ As stated above, the main dispute is whether Cable Car must respond to the Board's document request regarding Cable Car's customer names. Cable Car argues that its customer list is proprietary information and that disclosure to the Board could disrupt its business. It advances several specific reasons why it should not have to disclose the names. First, Cable Car argues that, in a related litigation matter, Judge Illston ordered that Cable Car would not have to disclose the names of its customers in response to a subpoena.[6] Second, Cable Car contends that, in a recent report and recommendation (addressing contempt proceedings between Cable Car and the Board in the Ninth Circuit), Ninth Circuit Appellate Commis-

---

6. The matter before Judge Illston related to an investigation by the Board into allegations that Cable Car may have committed addition-
al violations of the NLRA and in contempt of a prior Ninth Circuit judgment.

sioner Peter L. Shaw recommended that Cable Car not be required to produce to the union documents showing the identity of Cable Car's customers. Finally, Cable Car argues that, if it were to disclose names, the Board would levy writs of garnishment against the customers and thereby drive Cable Car out of business.

In response, the Board argues that both the Judge Illston order and the Ninth Circuit report and recommendation do not support Cable Car's proposition that the identity of the customers is privileged and/or proprietary. First, the Board argues that Judge Illston's order was related to a motion filed with the court to enforce a subpoena investigating allegations that Cable Car may have committed additional violations of the NLRA and in contempt of a prior Ninth Circuit judgment. In order to investigate the subject, the Board subpoenaed information and documents that may have identified customers. In an effort to expeditiously investigate the matter and without waiving the Board's argument that customer identity was not privileged and/or proprietary, the Board compromised on the need for all of the subpoenaed information. The order signed by Judge Illston was prepared by the Board and incorporated the Board's compromised language; thus, the issue of whether or not the identity of Cable Car's customers was a privileged and/or proprietary matter was never litigated.

Second, the Board argues that Commissioner Shaw's report and recommendation addressed the issue of an employer's obligation under the NLRA to provide information when requested by the union that represents its employees. Therefore, the Commissioner's findings are in no way related to the Board's efforts to obtain compliance with the judgment requiring the payment of backpay to employees.

Finally, the Board contends that it needs the identity of Cable Car's customers in order to examine the financial condition of Cable Car and its business relationships. As noted above, Cable Car has failed to make any payment on the judgment. In addition, the Board argues that, under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 *et seq.*, it is entitled to pursue collection of the judgment debt owed by Cable Car via post-judgment remedies including garnishment. *See* 28 U.S.C. §§ 3205(a), (b)(1)(C) (discussing postjudgment writ for garnishment) [7]; *cf. NLRB v. E.D.P. Medical Computer Systems, Inc.*, 6 F.3d 951, 957 (2d Cir.1993) (granting NLRB's application for prejudgment writ seeking garnishment of funds owed to the employer for services rendered to recover a backpay award pursuant to the FDCPA). If the Board were to apply for a postjudgment writ of garnishment, it would need the names of customers to levy the funds from, as required under 28 U.S.C. § 3205(c)(2)(B) ("The writ shall state the name and address of the garnishee.").

Having considered the parties' arguments, the Court recommends that documents identifying Cable Car's customers be produced. The documents are relevant for the reasons specified by the Board. *See Brooklyn Manor Corp.*, 1999 WL 1011935, at *2, 1999 U.S. Dist. LEXIS 16310, at *7 (stating that, so long as the material requested by subpoena "touches a matter under investigation," the subpoena will survive a challenge that the material is not relevant). In particular, the documents are relevant to (1) Cable Car's purported inability to make any type of pay-

---

7. Title 28 U.S.C. § 3002(8) defines "judgment" as a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt. Since the Ninth Circuit has affirmed the backpay judgment against Cable Car, this would be characterized as a post-judgment writ.

ment towards its judgment (revelation of its customer list is probative of its financial status) and (2) a potential postjudgment writ by the Board to garnish customer payments owed to Cable Car. Although Cable Car argues that allowing the Board to garnish payments will drive it out of business, that is not a sufficient reason not to disclose the names. The Board has demonstrated that this step is necessary given that judgment has been outstanding for over thirteen months, with no payments having been made, and Cable Car's admission that it is an operating business.

To the extent that there are any privacy and/or proprietary concerns attendant to the customer list, those concerns may be addressed by requiring production of the documents subject to a protective order.

### C. Board's Request for Costs and Attorney's Fees

Because the Court recommends that Cable Car be compelled to comply with the investigative subpoenas issued by the Board, the Court must address the Board's contention that it is entitled to associated attorney's fees and costs—namely, the attorney's fees incurred by the Board in filing the opposition/cross-application and the costs incurred by the Board for canceling the depositions of Ms. Bennett and Mr. Wright in San Francisco.

The Board argues that such relief is appropriate where the subpoenaed party has no legitimate objection to compliance with the subpoenas. In support of its argument, the Board cites several discovery decisions in which sanctions were awarded pursuant to the Federal Rules of Civil Procedure. The Board also cites one case in which the NLRB was awarded costs incurred in a subpoena enforcement proceeding. *See NLRB v. A.G.F. Sports,*

*Inc.* 146 L.R.R.M. 3022, at *2, 1994 WL 507779 (E.D.N.Y.1994) (but providing no analysis as to the basis for the award).

In response, Cable Car points out that there is no language in § 161 of the NLRA that explicitly provides for attorney's fees and/or costs incurred in seeking an order for subpoena enforcement. Cable Car also argues that the court in *A.G.F. Sports* did not explain why fees and costs were awardable to the Board. Finally, Cable Car argues that, although Federal Rule of Civil Procedure 45(c)(1) provides for fees, it relates to subpoenas issued by a court and therefore is not applicable here.

As Cable Car has pointed out, neither § 161(1) nor § 161(2) has any provision regarding payment of attorney fees or costs incurred in enforcing a subpoena in district court. The only basis for allowing fees or costs is under § 161(2), when "failure to obey such order of the court may be punished by said court as a contempt thereof." However, this applies when the district court has already issued an order enforcing compliance to the subpoena and the party disobeys the order. *See* 29 U.S.C. § 161(2). It does not appear that the statute would cover costs incurred in filing a motion to enforce compliance.

While there does not appear to be any basis for fees and costs under § 161 of the NLRA, such a provision may be found in Federal Rule of Civil Procedure 81. Rule 81 covers applicability of the Federal Rules to particular proceedings. Rule 81(a)(3) provides that "these rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." [8] Further, Rule

---

**8.** The advisory committee notes for Rule 81 state that, under Rule 81(a)(3), the "[federal] rules apply to appeals from proceedings to

enforce administrative subpoenas." The notes also state that, "although the provision

81(a)(5) refers specifically to the applicability of the Rules to the Board, providing that "these rules do not alter practice in the U.S. district court of 29 U.S.C. §§ 159–160, for beginning and conducting proceedings to enforce orders of the National Labor Relations Board; and in respects not covered by those statutes, the practice in the district courts shall conform to these rules so far as applicable."

Courts have read the above provisions in Rule 81 to allow courts to apply the Federal Rules whenever possible—*i.e.,* where statutory provisions are otherwise silent on procedural matters. *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,* 5 F.3d 1508 (D.C.Cir.1993) (stating that Rule 26(b)(3) applies to subpoena enforcement proceedings according to the terms of Rule 81(a)(3) in determining whether privilege exists in opposition to an order compelling enforcement of administrative subpoena); *U.S. v. Allen,* 578 F.Supp. 468, 472–74 (W.D.Wis.1982) (holding that, under Rule 81(a)(3) and Rule 45, sanctions could be awarded in an administrative subpoena enforcement proceeding). *Cf. NLRB v. Doug Neal Management Co.,* 620 F.2d 1133, 1139 (6th Cir.1980) (refusing to enforce NLRB order because it was not based on substantial evidence and because the real party in interest, the owner, was not joined in the action as an indispensable party under Rule 19). Treatises are in accord. *See* Am.Jur.2d Labor & Labor Relations § 2917 ("When an action is instituted in a U.S. district court, the Federal Rules of Civil Procedure do not alter the practice for beginning and conducting the

proceedings. However, in matters not covered by the NLRA, the district court practice must conform to applicable federal rules."); Moore's Fed. Practice—Civil § 81.06(4) ("The statutory practice for commencing and conducting proceedings in the district courts to enforce orders of the National Labor Relations Board is not altered by the Federal Rules of Civil Procedure. The Rules do apply, however, to the extent that those statutes do not cover the practice and so far as the procedures under the Rules are applicable.").

Based on the foregoing, the Court concludes that, because §§ 161(1) and (2) are silent on the matter of attorney's fees and costs with respect to a motion to enforce a subpoena, the Federal Rules are applicable pursuant to Rule 81(a)(3) and (5). In particular, sanctions for failure to comply with discovery, under Rule 37.[9]

### 1. *Failure to Appear for Deposition*

The Court recommends that the Board be awarded the costs incurred as a result of Cable Car's failure to produce Ms. Bennett and Mr. Wright for their depositions (*e.g.,* costs incurred for canceling the flight to San Francisco to take the depositions). Under Rule 37(d), a properly served party failing to appear for deposition can be subject to sanctions and the court can require the party failing to act to pay the reasonable expenses, including attorney's fees, unless the court finds the failure substantially justified or if other circumstances make it unjust. Cable Car asserts that it decided not to appear for the depositions out of concern that its managing

---

allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with the summary determination desired, it is drawn so as to permit application of any of the rules in the proceedings whenever the district court deems them helpful."

**9.** In the instant case, the Board's subpoenas seek documents from and depositions of the opposing party and, in this respect, are comparable to discovery requests pursuant to Rules 34 (documents) and 30 (depositions). Rule 45 applies to subpoenas directed at nonparties.

agents would have to appear more than once if the dispute on the disclosure of customer names were resolved against it after the first appearance. However, Cable Car's position is not substantially justified inasmuch as it unilaterally cancelled depositions on a Friday, only three days before their scheduled date. Cable Car has little justification in failing to object earlier, especially since the face of the subpoenas stated that "objections to the subpoena must be made by a petition to revoke . . . and must be received within five days of your having received the subpoena." Opp'n, Ex. 1. It waited until the eleventh hour to cancel the deposition, causing the Board to incur certain alleged costs.[10]

### 2. *Failure to Produce Documents*

The Court also recommends that, pursuant to Rule 37(d), the Board be awarded the attorney's fees incurred as a result of filing its opposition/cross-application. As above, Cable Car's reason for failing to produce documents responsive to the Board's subpoenas is not substantially justified. Cable Car has failed to demonstrate that its customer names are privileged or constitutes proprietary information that cannot be protected by a protective order. The information is relevant to the Board's attempt to enforce the judgment, and the exercise of its subpoena power valid. Moreover, Cable Car has failed to explain why it has not produced documents responsive to the remaining discovery requests (requests to which Cable Car did not have any objection). To the extent that Cable Car argues that it has not produced documents because of the imminent possibility of settlement, that argument is rejected. Simply because parties are discussing settlement does not free

them of their discovery obligations unless they specifically agree to such. Moreover, Cable Car's claim that settlement is imminent is not convincing based on the Board's representation to the contrary. *See also* Board's Informative Mot. Concerning Settlement at 1–2 (noting that parties have not been able to reach settlement and requesting that Court issue an order in this matter).

### III. *RECOMMENDATION*

For the foregoing reasons, this Court recommends as follows:

1. Cable Car's motion for order modifying and quashing subpoenas should be denied.

2. Cable Car should be compelled to fully comply with NLRB Subpoena No. B–441333 by producing all of the responsive documents within ten days of issuance of the district judge's order.

3. Cable Car should also be compelled to fully comply with NLRB Subpoenas Nos. A–666912 and A–666913 by producing Ms. Wright and Mr. Bennett for deposition. The parties should meet and confer to agree upon a date but the depositions should take place no later than thirty days after issuance of the district judge's order.

4. Cable Car should reimburse the Board for the attorneys' fees and costs incurred by the Board in connection with this subpoena enforcement proceeding and for costs associated with canceling the scheduled deposition trip. The Board should file a declaration itemizing its reasonable fees and costs.

March 15, 2004.

---

**10.** The Board has not yet submitted evidence of those costs.