NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4331
_____

IN RE: JEVIC HOLDING CORP., et al.,
                                                          Debtors


CASIMIR CZYZEWSKI; MELVIN L. MYERS;
JEFFREY OEHLERS; ARTHUR E. PERIGARD;
DANIEL C. RICHARDS, on behalf of themselves and
all others similarly situated,
                                                          Appellants

v.

JEVIC TRANSPORTATION, INC.; JEVIC HOLDING CORP;
CREEK ROAD PROPERTIES, LLC; SUN CAPITAL PARTNERS,
INC.; JOHN DOES 1-10

_____

On Appeal from the District Court
for the District of Delaware
(D.C. Civil No. 1-13-cv-01127)
District Judge: Honorable Sue L. Robinson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 27, 2015

Before: GREENAWAY, JR., SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: July 27, 2016)

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

In this adversary proceeding, part of a broader bankruptcy case, plaintiffs Casimir

Czyzewski et al. appeal an order granting summary judgment to Sun Capital Partners,

Inc. (SCPI) on plaintiffs' claim that SCPI and debtors Jevic Transportation, Inc.

("Jevic"), Jevic Holding Corp. ("Jevic Holding"), and Creek Road Properties, LLC were

a "single employer" under the Worker Adjustment and Retraining Notification Act, 29

U.S.C. § 2101 *et seq.* ("WARN Act"). The WARN Act provides "[a]n employer shall not

order a plant closing or mass layoff until the end of a 60-day period after the employer

serves written notice of such an order" to each affected employee. 29 U.S.C. § 2102(a)(1)

(2012). "[I]ndependent contractors and subsidiaries which are wholly or partially owned

by a parent company are treated as . . . a part of the parent or contracting company"—that

is, as a single employer—"depending upon the degree of their independence from the

parent." 20 C.F.R. § 639.3(a)(2) (2015).

For the reasons given in the well-reasoned opinions of the District Court and

Bankruptcy Court, we will affirm.[1]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). It noted the adversary proceeding was a "core" proceeding under 28 U.S.C. §§

# I.

The debtors in the broader bankruptcy case are Jevic, Jevic Holding, and Creek Road Properties, LLC. All the debtors' operations occurred through Jevic. Jevic, a now-bankrupt trucking company, is a wholly-owned subsidiary of Jevic Holding, which is itself a wholly-owned subsidiary of Sun Transportation, LLC. SCPI owns 100 percent of the equity in Sun Transportation, LLC. SCPI created Sun Transportation, LLC and Jevic Holding to acquire the debtors. SCPI's co-Chief Executive Officers are Rodger R. Krouse and Marc J. Leder.

In 2006, Sun Transportation, LLC acquired the debtors in a leveraged buyout. The buyout gave Jevic access to an $85 million revolving credit facility from a bank group led by CIT Group/Business Credit, Inc. ("CIT"). Upon the acquisition, Jevic and SCPI entered into a management-services agreement governing the relationship between them. Jevic struggled through 2007 and eventually its assets fell below the level required to maintain its credit facility from CIT. In March 2008, SCPI chose not to invest more money in Jevic, and Jevic began an active sale process. After meetings with buyers did not produce a sale, on May 16, 2008, Jevic's board authorized a bankruptcy filing. Jevic then sent its employees termination notices under the WARN Act, which they received on May 19, 2008. Jevic filed for Chapter 11 bankruptcy the next day, May 20.

---

157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O). The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

On May 21, 2008, plaintiffs filed a class-action lawsuit alleging Jevic and SCPI were a "single employer" for purposes of the WARN Act. The Bankruptcy Court certified the class.

During discovery, plaintiffs deposed twelve people. They also asked to depose Krouse and Leder. After SCPI moved for a protective order, the Bankruptcy Court quashed plaintiffs' notices of the depositions of Krouse and Leder.

SCPI and plaintiffs each moved for summary judgment on the plaintiffs' single-employer claim. The Bankruptcy Court held Jevic and SCPI were not a single employer under the WARN Act. Accordingly, it granted SCPI's motion and denied plaintiffs' motion. *In re Jevic Holding Corp.*, 492 B.R. 416 (Bankr. D. Del. 2013). Subsequently, plaintiffs appealed to the District Court, which affirmed the Bankruptcy Court in all respects. *In re Jevic Holding Corp.*, 526 B.R. 547 (D. Del. 2014). Plaintiffs appealed.

## II.

We review *de novo* the legal conclusions in a WARN Act "single employer" liability determination made on summary judgment. *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 239 (3d Cir. 2008). We construe the facts in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a decision to quash a subpoena for abuse of discretion. *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992).

## III.

4

Plaintiffs raise the same two claims of error they raised in the District Court. First, they contend the Bankruptcy Court erred by holding SCPI was not a single employer with Jevic under the WARN Act. Second, they contend the Bankruptcy Court erred by quashing their notices of the depositions of Krouse and Leder.

**A.**

To determine whether two business enterprises are a single employer under the WARN Act, we apply the five-factor test we adopted in *Pearson v. Component Technology Corporation*, 247 F.3d 471 (3d Cir. 2001), and clarified in *APA Transp. Corp.* The five factors are "(1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) dependency of operations." *APA Transp. Corp.*, 541 F.3d at 243. The five-factor test is a balancing test, but the factors are not balanced equally. *Id.* Satisfying "the first and second factors, common ownership and common directors and/or officers, [is] not sufficient to establish that two entities are a 'single employer.'" *Id.* And "if the de facto exercise of control was particularly striking—for instance, were it effectuated by disregard[ing] the separate legal personality of its subsidiary—then liability might be warranted even in the absence of the other factors." *Pearson*, 247 F.3d at 504 (internal citation and quotation marks omitted).

Here, SCPI does not dispute the lower courts' findings that the first two factors were satisfied. But plaintiffs and SCPI dispute whether there is a genuine issue of material fact with respect to the final three factors.

The third factor, de facto exercise of control, tests whether "the parent or lender was the decisionmaker responsible for the employment practice giving rise to the litigation." *Id.* at 503–04. We agree with the courts below that plaintiffs have not demonstrated the genuine dispute of material fact necessary to survive summary judgment with respect to this factor.

The Bankruptcy Court found that "the facts in *Pearson* [are] analogous to the facts of this case" and "as a practical matter [the secured creditor] exerted even more control in *Pearson* than [SCPI] is alleged to have done here." J.A. 34. And the District Court held that "any alleged oversight during the process leading up to filing for bankruptcy [wa]s significantly lower than in *Pearson* where the indebted party was required to seek approval for many of its decisions." *Id.* at 15 (internal citation and quotation marks omitted). The facts in *APA Transp. Corp.* are also analogous to the facts of this case. In *APA Transp. Corp.*, we found that "while APA Truck Leasing may have made certain loans to APA Transport and shared certain administrative functions, it was not 'controlling' APA Transport and played no role in APA Transport's decision to close its facilities." 541 F.3d at 245. Here, as the courts below found, "it remains undisputed that the Debtors made the decisions to shut down the company" and "Jevic was directly responsible for signing the WARN notice and terminating employees." J.A. 15 (internal citation and quotation marks omitted).

Plaintiffs contend that because SCPI's actions overwhelmed Jevic, SCPI should be subject to single-employer liability based on the "de facto exercise of control" factor

6

alone. We disagree. We see no genuine dispute of material fact with respect to the third factor and hold that this factor weighs in favor of SCPI.

The fourth factor, unity of personnel policies emanating from a common source, tests "whether the companies actually functioned as a single entity with regard to [their] relationships with employees." *Pearson*, 247 F.3d at 499. Both courts below found the record was insufficient to create a genuine dispute of material fact with respect to this factor. As the District Court found, plaintiffs "failed to produce evidence that appellee directly hired or fired Jevic employees, paid the salaries of Jevic employees or shared a personnel or benefits recordkeeping system with Jevic." J.A. 17 (emphasis removed). Plaintiffs contend SCPI shared certain personnel-related programs with Jevic and policed Jevic's personnel actions. But the companies in *APA Transp. Corp.* shared "certain benefit plans and some employee monitoring functions" too. 541 F.3d at 245. Plaintiffs' specific allegations here—that SCPI set up and oversaw an incentive compensation program for Jevic's management, that Leder reviewed the proposal for the program, and that SCPI once proposed $3 million in headcount cuts—do not raise a genuine issue of material fact about "whether the companies actually functioned as a single entity with regard to [their] relationships with employees." *Pearson*, 247 F.3d at 499.

The fifth factor, dependency of operations, addresses whether two business enterprises "shar[e] administrative or purchasing services," "interchange[] employees or equipment," and "commingle[] finances." *Id.* at 500. Requests for approval of actions do not alone demonstrate dependency of operations without evidence the parent was "involved in the details or manner of implementation of any . . . business plans" of the

7

subsidiary. *Id.* at 502. Similarly, the mere fact a subsidiary "was financially dependent on [the parent's] loans, and ultimately was unable to stay afloat without them" is insufficient to demonstrate dependency of operations. *Id.* at 503. The Bankruptcy Court noted it was "undisputed that Jevic maintained separate books and records, had its own bank accounts, [] prepared its own financial statements," and "did not share administrative services, facilities, or equipment with [SCPI]." J.A. 40. It also found "no evidence that [SCPI] employees were involved in the day-to-day business operations of Jevic sufficient to show an existence of dependency." *Id.* The District Court agreed with this analysis.

Plaintiffs now argue Jevic depended on the administrative arrangements it shared with SCPI, SCPI was involved in the creation, details, and manner of implementation of Jevic's business plans, and SCPI undercapitalized Jevic and extracted management fees from it. But their support for these claims is thin, and does not demonstrate dependency of operations. SCPI continued to operate without incident after Jevic folded, just as APA Truck Leasing continued to operate without incident after APA Transport folded. *See APA Transp. Corp.*, 541 F.3d at 245. In short, plaintiffs' claims are insufficient to create a genuine issue of material fact regarding the companies' dependency of operations.

We have held there is no single-employer liability when "the final three factors are clearly in favor of" a company opposing such liability. *Id.* That is the case here. Accordingly, we will affirm the grant of summary judgment.

**B.**

Plaintiffs also contend the Bankruptcy Court should have permitted them to depose Krouse and Leder. They contend Krouse and Leder had particularized and

8

specific knowledge of SCPI's business practices and the critical interactions and decisions that are the focus of this litigation. But as SCPI points out, plaintiffs "do not suggest that this alleged 'err[or]' itself warrants reversal of the judgment." Br. Appellees 54. Instead, plaintiffs contend they should be permitted to take Krouse's and Leder's depositions in the event this case is remanded for further proceedings. Because we will not remand this case, we need not reach this issue.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.